UNITED STATES v. SYKES.

(District Court, W. D. North Carolina. October 7, 1893.)

1. OFFICE AND OFFICER—APPOINTMENT—DEPUTY COLLECTOR.
   A deputy collector is authorized to act as such when his commission has been signed and placed in the mail, and he is notified thereof by telegram.

2. CRIMINAL LAW—MISDEMEANOR.
   When a person commits a misdemeanor under the instructions of another, it is only necessary, in order to implicate the latter, that his instructions have been substantially complied with.

3. SAME—DISTILLED SPIRITS—UNLAWFUL REMOVAL—AIDING AND ABETTING.
   The fact that the statute makes the aiding and abetting of another in the removal of illicit spirits a distinct offense does not prevent a person so aiding and abetting from being convicted as a principal in the removal, under the rule making all participants in misdemeanors liable as principals.

4. SAME.
   One who, knowing that certain casks of whisky are without revenue stamps, obstructs an officer attempting to seize the same, in order that opportunity may be given for another to escape therewith, is guilty under the statute.

5. SAME—EVIDENCE—ACCOMPLICES.
   The rule that a conviction should not be had on the uncorroborated testimony of an accomplice applies when witnesses introduced by defendant confess themselves to be confederates in the crime.

6. SAME—PRESUMPTIONS—BURDEN OF PROOF.
   Proof that illegal sales of whisky frequently occur on a man's premises and about his house raises a presumption of fact against him, and places the burden on him to show that the acts were without his knowledge or approval, or that he was powerless to prevent them.

At Law. Indictment of L. G. Sykes for the unlawful removing and selling of spirituous liquors. Verdict of guilty.

Clement Manley and D. A. Covington, for the United States.
James T. Morehead and Jas. E. Boyd, for defendant.

DICK, District Judge, (charging jury.) In the argument for the defense it was insisted that the evidence disclosed on the part of

pretended officers of the law acts and circumstances of high-handed violence very similar to the outrages of lynch law. Lynch law is abhorrent to a court of justice, and should be discountenanced and opposed by all good citizens. Lynch law is defiance of law. The evidence in this case tends to show defiance of law on the part of the defendant. There is a state law that prohibits the sale of spirituous liquors within four miles of the State University, situated at Chapel Hill, and the evidence shows that the defendant had for a long period of time carried spirituous liquors within such prohibited limits, and persistently sold the same, contrary to law. If he had paid the special tax required of retailers, and obtained a license from the federal government, he could not be prosecuted in this court for making sale under such license, but he would be liable to prosecution in the state courts for violation of a law of the state, and his United States license could not be availed of as a defense. The uncontroverted evidence in this case shows that in December last the prosecuting witness, George T. Winston, president of the State University, being informed that a quantity of spirituous liquors were about to be brought to Chapel Hill, applied to the collector of internal revenue in that district, residing at Raleigh, for a special commission authorizing Merrit, as deputy collector, to make seizure of such spirituous liquors if they should be found in unstamped packages. About six hours before the temporary detention and subsequent seizure of such whisky the collector sent a telegram to President Winston, informing him that the requested appointment had been made, and a commission had been duly signed and placed in the mail, to be transmitted to the deputy at Chapel Hill. The telegram was shown to the deputy collector before he attempted to detain the whisky that was in the wagon in the street in front of the residence of the defendant. No formal seizure was made at that time, as the defendant remonstrated, and made demand of the officer to show his commission and authority for detaining the wagon and whisky. During this contention, John B. Sykes, the son of the defendant, who had this wagon in charge, drove off the team rapidly, and probably would have escaped if the wagon had not come in contact with an express wagon in the street. About that time Merrit received his commission as deputy collector from the post office, and he at once made a seizure of the wagon and its contents. I am of opinion that the deputy collector had legal authority to detain the wagon and make seizure of the same and the illicit packages of whisky. As soon as his commission was signed and placed in the post office for transmission by mail, and he was notified by telegram, he became deputy collector, with full authority to make the seizure. The actual receipt of the commission was not essential to his investiture of the office.

He made no invasion of the premises of the defendant, as the wagon was in the public street; and he did not go into the house for the purpose of making a personal arrest, as he had no such authority as deputy collector. I think he acted prudently in not, at that time, making seizure of the wagon, as he was not a well-known officer, and was not able to show his commission when demand was

made by the defendant; but he could in no respect be held liable as a trespasser. When he subsequently made seizure he had his commission in possession, which was visible and conclusive evidence of his authority to seize the wagon and its contents, including the two jugs of whisky carried off by defendant.

In the argument for the defense the active zeal of President Winston was severely criticised. You have the right to pass upon the weight of his testimony, and give it such credit as you may deem proper; and in doing so you must not be influenced by my opinion upon the subject. After giving you this caution, I have the right to express my opinion as to his conduct in this prosecution. He is the president of the State University, and has under his charge and supervision a large number of boys and young men committed to his care by parents and guardians who expect him to guard such students against temptations that may lead them into intemperate and immoral habits. The evidence shows that he has been very vigilant and diligent in this prosecution, and it was his imperative duty to be so. With the information which he possessed as to whisky being brought to Chapel Hill for the purpose of sale, if he had failed to do everything within his power to prevent the violation of a state law expressly enacted for the protection of the moral habits of students, he would have shown himself to be unworthy of the high public trust conferred upon him. Indifference about such matters would have been culpable negligence, and failure of effort to prevent or remove such a dangerous nuisance after full knowledge of its existence would, in a moral point of view, have been criminal disregard of official duty. His position as president of the university shows public opinion as to his high character; and his clear, intelligent, and candid testimony commends itself to your careful consideration. I have given you my personal opinion, but you have the right to give such credit to his testimony as you may think that it deserves.

All the testimony shows that there was in the wagon, when seized, three 10-gallon casks, without the stamps affixed required by law. It is conceded that John B. Sykes, the son of the defendant, is guilty of the misdemeanor of removing said casks of spirits. In misdemeanors there are no accessories, either before or after the fact, all persons concerned in them being considered in law as principals. When the person who actually commits the crime acts under the instructions of another, it is not necessary, in order to implicate the latter, that the instructions be proved to have been precisely followed; it will be sufficient to show that they have been substantially complied with. If a person knows that a misdemeanor has been committed, and afterwards opposes the apprehension of the wrongdoer, or obstructs an officer of the law in the excution of his legal duty in relation thereto, or advises and aids the offender to make his escape, and carry off the subject and evidence of the crime, he becomes guilty of the crime proved to have been previously committed.

The counsel of the defendant requested me to instruct you that the defendant was not liable to conviction under this count in the in-

dictment, as the statute which makes the removal of illicit distilled spirits a criminal offense expressly makes the aiding or abetting of such removal a separate and distinct offense. The statute does make the aiding or abetting in the removal of distilled spirits, on which the proper tax has not been paid, a substantive and distinct criminal offense; but it does not do away with the well-settled and long-established rule of law making all participants in misdemeanors liable as principals, although a conviction or acquittal of one of these offenses could be pleaded in bar to a prosecution for the other.

I will again state to you the principles of law which I think are applicable to this case: that in misdemeanors any person who advises, procures, aids, or abets in the commission of the offense, or who, having knowledge that such offense has been committed, in any way assists the wrongdoer in concealing his crime, or in making his escape from the officers of the law, is a principal; the general rule of law being that whatsoever participation in the transactions, either before or after the fact, would make the party an accessory in felony, will make him a principal in a misdemeanor, and he may be so charged in a bill of indictment. The evidence tends to show that John B. Sykes employed a horse and wagon belonging to his father, the defendant, in the removal of the unstamped packages of whisky; that they were carried, in the nighttime, to the gate of the yard of defendant; that the son knew that he was followed and watched by President Winston; that when the wagon was stopped at the gate the son went into the house, and had a conversation with the defendant; that both of them came out of the house into the street, where the wagon was; that the defendant opposed the detention and seizure by the officer; that while the officer was showing some papers to the defendant, John B. Sykes got in the wagon, and drove off rapidly, until he was stopped by coming in contact with the express wagon; and that defendant objected to seizure when made, and carried off the two jugs of whisky that were in the wagon, claiming them as his property. Now, gentlemen of the jury, if you are fully satisfied from all the facts and circumstances mentioned in the evidence that the defendant, by advice, instruction, or other assistance, aided his son in procuring and removing such illicit whisky, then you can properly return a verdict of guilty against the defendant. If you are fully satisfied from the evidence that after the whisky had been brought to the house of the defendant he knew that the casks of whisky were without stamps affixed, and he obstructed the officer of the law in the execution of his legal duty, in order that his son might have an opportunity of making escape with the wagon and its contents, then you can properly find a verdict of guilty on that view of the case.

The defendant introduced as a witness his son, John B. Sykes, the principal actor in the illegal transaction, for the purpose of showing that he had given him instructions that only tax-paid whisky should be purchased from the distiller, and that it was to be put in properly stamped packages. The witness testified that part of the whisky in all the casks belonged to his father, who had given

him instructions to purchase tax-paid whisky; that it was drawn by the distiller from a stamped barrel, and that his father did not know that the whisky had been put in unstamped casks. On cross-examination it appeared that his testimony on the examination in chief was in conflict with his oral and written declarations and confessions, which tended to show that he had acted in all respects under the advice and instructions of his father in the commission of the crime of removal of the whisky. The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury, and they may believe and act upon such evidence without any confirmation of his statements. But it is the duty of the judge to advise the jury to consider such testimony with great caution, and not regard it as worthy of credit without corroboration by other evidence material to the issues before them. In doing so the judge does not withdraw the case from the jury by positive direction, but only advises them not to give entire credit to such unsupported testimony. These principles and rules of law are well settled in cases where accomplices are introduced as witnesses in the prosecution of defendants. I differ in opinion from the counsel of defendant, as I think that the same principles and rules of law, founded in expediency, reason, and justice, should be applied when a defendant introduces witnesses who confess themselves to be confederates in the crimes alleged in cases on trial.

When a person is found in possession of, or is shown to be culpably connected with, spirituous liquors in packages of more than five gallons' capacity, without the stamps required by law being affixed, the burden of proof is on him to show that such spirits are tax-paid, and were put in unstamped casks without his knowledge, procurement, or connivance. The law requires such packages to be properly stamped, and, if they are without such stamps affixed, the law presumes that they are illicit. A presumption of law is one which a judge draws from the language or principles of the law and from particular facts or evidence, unless or until the truth of such inference is disproved. Such presumption derives its force from the law, and it should only be rebutted by clear and satisfactory proof to the contrary. I advise you that the presumption of law arising in this case should not be overcome by the uncorroborated testimony of an accomplice, who confesses himself to have been the actor in the illegal transaction.

The second count in the indictment charges that the defendant sold spirituous liquors without having paid the special tax required by law, and procured a license authorizing such sale. There is no direct evidence of any specific sale made by the defendant. He admitted to President Winston that he sold whisky, and expected to continue the business. His son—his own witness—testified that he had often carried quantities of whisky to the house of defendant for him. Other witnesses testified that they had sent persons to the house of defendant with empty bottles, which were returned filled with whisky. One witness testified that he and other persons were in the habit of meeting at a blacksmith shop, and mak-

ing arrangements (which he called "patching") to procure whisky, by sending to the house of defendant, which was near said shop; that such arrangements were made more than 25 times; that he saw the agents sent go into the yard of defendant, and one time into the house; that such agents took the money contributed by way of patching, and went with empty bottles, which were returned filled with whisky. As you listened carefully to the testimony, I will not further repeat its details. Presumptive and circumstantial evidence is often as satisfactory proof as direct and positive testimony. Presumptions of fact depend on inferences to be drawn by a jury in ascertaining one fact from the proved existence of another, without the aid of any rule of law. This process of finding out the truth of matters of fact in controversy in a trial at law belongs to the exclusive province of a jury. They may be properly aided by the advice and instruction of the judge, but he should not control them by positive directions, as the whole matter should be left to their free and independent determination. Presumptions of fact have been classified by text writers and judicial decisions as strong, probable, and slight. When a fact proved always accompanies a fact sought to be proved, it gives rise to a strong presumption that may control a jury in their investigation. When the fact proved usually accompanies the fact sought to be proved a probable presumption arises. Slight presumptions, which arise from the occasional connection of distinct facts, are generally disregarded by a jury. Presumptions of fact which the law recognizes must be immediate inferences from the facts proved, and must be such as sensible men, influenced by observation, experience, and reason, would draw from clearly established facts that usually accompany the matter at issue.

The common law, constitutional and statute law make ample provision to secure a man's house from unauthorized invasion. He is also invested with the privileges, duties, and powers of a master in controlling his household; and the law presumes that he will not allow any illegal transaction to be carried on upon his premises which he has the power to prevent. There is also a presumption of fact, drawn from human experience, that illegal transactions cannot be habitually and for a long period carried on upon his premises without his knowledge and acquiescence. When it is proved that illegal transactions frequently occur upon his premises, the burden of proof is upon him; and if he desires to free himself from the responsibilities of such transactions he must show that such acts were done without his knowledge and approval, or he was powerless to prevent them.

I have instructed you as to the questions of law involved in this case, and I have endeavored to advise you correctly as to the proper methods of investigating the issues of fact submitted to you for determination. If my opinions as to the questions of law involved are erroneous in the particular points presented in the exceptions made and noted by the counsel for defendant, such opinions can be reviewed and reversed in the supreme court; and I have allowed counsel time to prepare and tender their bill of ex-

ceptions for my signature. If you are satisfied from the testimony, beyond a reasonable doubt, that the defendant is guilty in the manner and form charged in the bill of indictment, you should render a verdict of "Guilty;" and if you are not so satisfied your verdict should be "Not guilty."

Verdict, "Guilty."