WESTERN UNION TELEGRAPH CO. v. WRIGHT, Comptroller General.

(Circuit Court, N. D. Georgia. January 25, 1909.)

TAXATION (§ 498*) — ASSESSMENT—TELEGRAPH COMPANIES—RESTRAINING ASSESSMENT.

A finding of the Board of Arbitrators of the state of Georgia as to the valuation of the property and franchise of a telegraph company in the state for the purpose of taxation construed, and *held* not to include as an element of value any right given the company by Act July 4, 1866, c. 230, 14 Stat. 221 (U. S. Comp. St. 1901, p. 3579), and therefore not to afford any ground upon which a federal court should enjoin the collection of the tax based thereon.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 498.*]

In Equity. On demurrer to bill.

Dorsey, Brewster, Howell & Heyman, for plaintiff.
John C. Hart, Atty. Gen., for defendant.

NEWMAN, District Judge. This case has now been heard on a demurrer to the bill. There has been a former hearing in this case on the application for injunction pendente lite. The opinion of the court in determining that matter is reported in Western Union Telegraph

Company v. Wright, 158 Fed. 1004. The facts are sufficiently stated in the report of that case, and need not be referred to here.

It is contended now on behalf of the Comptroller General that the Board of Arbitrators, appointed and acting under the statutes of the state of Georgia in this matter, was a state court, that its functions were judicial, and that to enjoin its action would be enjoining a state court, in violation of section 720 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 581). The contention made at the former hearing on behalf of the telegraph company is again pressed, to the effect that, in making the finding of valuation of the franchise of the Western Union Telegraph Company, the Board of Arbitrators embraced therein the value of a franchise derived by the telegraph company from the United States, under the act of Congress of July 24, 1866, c. 230, 14 Stat. 221 (U. S. Comp. St. 1901, p. 3579).

If this contention of the telegraph company is not sustained, it will render unnecessary the determination of the question as to whether the Board of Arbitrators, provided for under the statutes of the state of Georgia, is a court in such sense that its acts cannot be enjoined by this court. The first question for determination, therefore, is the meaning of the language used by the Board of Arbitrators in the paper attached by them to their finding as to the valuation of the property and franchise of the telegraph company. The language of the Board of Arbitrators is this:

"In fixing the valuation of the franchise under which the Western Union Telegraph Company constructed and maintains and operates its lines of telegraph in Georgia, we have been unable to designate or set apart the value of the franchise conferred by the act of Congress of June, 1866. Whether the company is or is not liable to taxation upon the value of the federal franchise is not a matter for the determination of this board, its function being merely to find the value of such franchise."

It will be seen that the Board of Arbitrators undertook to fix "the value of the franchise under which the Western Union Telegraph Company constructed, maintains, and operates its lines of telegraph in Georgia." After fixing this they assumed, apparently, that a part of the valuation of this franchise was derived from, and exercised under, the act of Congress of July 24, 1866 ("June, 1866," was evidently intended to be "July, 1866").

The Board of Arbitrators speak of "the value of the federal franchise under which the testimony shows the company operates in Georgia." No testimony could have shown this, because, by repeated decisions of the Supreme Court, the franchise under which the company operates in all the states of the United States is the franchise it derives by its charter from the state of New York. It has no federal franchise. That which it obtained by the act of Congress of July 24, 1866, was permissive only. The language of the Supreme Court of the United States in Western Union Telegraph Company v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790, is that this act of Congress—

"is merely a permissive statute, and there is no expression in it which implies that this permission * * * carries with it any exemption from the ordinary burdens of taxation."

In my judgment, the proper construction of the language used by the Board of Arbitrators is that they fixed the value of the franchise under which the company was operating in Georgia at the amount named by them, and that they believed that a part of this franchise, the valuation of which was so fixed, was derived by the telegraph company from, and was exercised by it by virtue of, the act of Congress of July, 1866. This, as I have stated, was an entirely mistaken view of the matter. If there was any reason to believe that the Board of Arbitrators added anything to the value of the franchise of the company in Georgia, then some ground for the action of this court might exist because of the fact that they had adopted a manifestly wrong principle. Chicago, Burlington & Quincy Railway Company v. Babcock, 204 U. S. 585–598, 27 Sup. Ct. 326, 51 L. Ed. 636. But if, on the other hand, they found the value of the franchise under which the company was operating in Georgia to be the amount fixed by them, and erroneously believed that some part of this came from the act of Congress, then no ground for such action on the part of the court as here prayed would exist. I believe, as just stated, that the latter view is the true one, and that the Board of Arbitrators first found the value of the franchise under some method adopted by them, and then believing that this franchise of the company, its right to do business, collect tolls, and carry on generally the business of telegraphy, was in part derived from the act of Congress of July 24, 1866, they made this statement and attached it to their finding in this case. The fact that they were under a misapprehension in this respect should not affect their finding, and does not authorize the court to interfere with their action.

This case appears to be fully controlled by Western Union Telegraph Co. v. Gottlieb, 190 U. S. 412, 23 Sup. Ct. 730, 47 L. Ed. 1116. In that case it appeared that the State Board of Equalization of Missouri assessed the value of all the property of the Western Union Telegraph Company in that state at $1,827,727.45. Nearly $1,000,000 of this was on the value of poles, wires, and instruments. "All other property" was assessed at $856,400.56. The apportionment of this tax for Jackson county, Mo., was $1,027.22. The county brought suit against the Western Union Telegraph Company to recover this tax, and in the trial court it was held that in valuing "all other property" of the company "the State Board took into consideration the franchise of defendant company, and the court finds under the law, and so declares, that the franchise of defendant company is not subject to valuation and taxation, and as to this item of the above-named valuation the court finds the issues for the defendant." Judgment was rendered in favor of the company for an amount which omitted that portion which the county would have received from the tax on "all other property." Both parties appealed to the Supreme Court of the state, which reversed the judgment of the circuit court, on the ground that its finding that the action of the State Board of Equalization in taxing "all other property" at $856,400.56 was unlawful was erroneous. This decision of the Supreme Court of Missouri was taken to the Supreme Court of the United States by writ of error from the latter court.

Mr. Justice McKenna in delivering the opinion of the Supreme Court

of the United States, said, as material to the question raised here (page 420 of 190 U. S., page 732 of 23 Sup. Ct. [47 L. Ed. 1116]):

"On the question of fact, if it be such, as to what constituted the item of 'other property at $856,400.56' in the assessment by the Board of Equalization, the trial court and the Supreme Court of the state are not in accord. The trial court found the 'fact to be from the evidence that, in valuation "of other property" of defendant, the state board took into consideration the franchise of defendant company.' It is apparent from the court's opinion that by 'franchise' the court meant the rights and privileges obtained by the plaintiff in error under the act of Congress of July 24, 1866. The Supreme Court of the state, however, expressed its conclusion from the evidence as follows: 'So when, in determining the value of the property of the defendant in this state, the Board of Equalization took into consideration "the cost of construction and equipment of said Western Union Telegraph Company and the location thereof, and its traffic and business and the par value of its stock and bonds, and the gross receipts and net earnings and franchises owned by said company, and the value thereof," it did not and could not have included therein any franchise derived by the defendant from the government of the United States, because that government had conferred no such franchise; nor was such a valuation placed upon all other property' a tax upon the franchise of the defendant company. The franchise derived by the defendant from the state of New York was considered by the board in determining the value of the property of the defendant located in this state. That is, that property was valued, not as so many poles, so much wire, so many instruments, or so much 'other property,' in the abstract, but was valued in the concrete in the relation that such property in the abstract bore to other property in the abstract, which being brought into relation towards each other—in a system located partly in this state, and partly in other states—gave each part a concrete value. The right to exist—the franchise—of the defendant was property, and was subject to taxation, either directly in the proportion that the portion of the franchise exercised in this state bore to the proportion of the franchise exercised in other states or indirectly, as was done in Massachusetts and as was done here, by being impressed upon the tangible property owned by it, thereby increasing its value, and by considering the franchise and its tangible property as a system, and then assessing the part of the property forming a part of the system and located in Missouri as of its proportionate value of the whole property constituting the system."

The opinion of the Supreme Court of the United States by Mr. Justice McKenna then proceeds as follows:

" * * * The trial court picked out the rights given to the defendant under the act of Congress, denominated them a franchise, contemplated the franchise as a distinct proprietary entity, and, because it was derived from the federal government, decided that it was exempt from taxation. The necessary consequence was and is to destroy the relation between that franchise and the other properties of the plaintiff in error, regarding them, not as parts of the system, but abstractly—regarding the poles not differently from other poles, the wire not differently from other wire. The Supreme Court, on the contrary, regarded the properties as related and as constituting a system, and because of their relation having a value greater than the sum of the values of the individual things regarded merely as such. Viewing the order of the Board of Equalization as the Supreme Court viewed it, was it valid? In other words, is the state in exercising its taxing power limited to assessing the mere material things used by the plaintiff in error, and must it regard them as of no greater value than they had when they reposed in lumber yards and factories, with cost added of putting them in place? Or the proposition may be stated another way, which better expresses the ultimate contention of the plaintiff in error: Conceding that the tangible property of the telegraph company derives value from its use in a system, does the company do business in the state in pursuance of the Constitution of the United States and the act of July, 1866, and become thereby an instrument of interstate commerce and

a government agent, and as such exempt from the taxation contested in this case? We think the question has been answered by this court."

Western Union Telegraph Company v. Massachusetts, 125 U S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790, is then cited, and in discussing it the court says:

"The contention of the company in that case was, as it is in this, that it did not derive its existence from the taxing state, but from the state of New York; that it did not do business in the taxing state by permission of that state, but by virtue of being an instrument of interstate commerce; that the rights and privileges and franchises were conferred by the United States, and constituted it an agent of the United States, and as such agent it was exempt from the tax imposed. The contentions were rejected."

The decisions of the Supreme Court of Missouri evidently met the approval of the Supreme Court of the United States, and the particularly pertinent part here of the decision of the Supreme Court of the state is that the State Board of Equalization—

"did not and could not have included therein any franchise derived by the defendant from the government of the United States, because that government had conferred no such franchise."

So here, if, in fixing the value of the franchise of the Western Union Telegraph Company subject to taxation in this state, the Board of Arbitrators erroneously assumed that a part of this franchise was derived from, and exercised under and by virtue of, the act of Congress of July 24, 1866, that should not vitiate the award, and it would not justify this court in interfering with the collection of the tax.

I am fully satisfied, after a careful re-examination of this case, that the claim of the complainant is not meritorious. There is nothing else in the bill which justifies an interference by this court with the collection of the tax by the Comptroller General. While other grounds for relief were referred to in argument, that which has been here discussed was mainly pressed and relied upon by counsel for the Western Union Telegraph Company.

The conclusion reached and stated above renders it unnecessary to determine the interesting question raised by the Attorney General of the state, on behalf of the Comptroller General, as to whether the Board of Arbitrators, acting under the statutes of Georgia, is a court of the state, and exempt from writ of injunction issuing from this court under the statutes of the United States.

A decree may be entered sustaining the demurrer to the bill.