WESTERN UNION TELEGRAPH COMPANY *v.* MISSOURI *ex rel.* GOTTLIEB.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No 256.  Argued April 21, 1903.—Decided May 18, 1903.

1. In estimating, for purposes of taxation, the value of the property of a telegraph company situate within a State, it may be regarded not abstractly or strictly locally, but as a part of a system operated in other States; and the taxing State is not precluded from taxing the property because it did not create the company or confer a franchise upon it, or because the company derived rights or priviliges under the act of Congress of 1866, or because it is engaged in interstate commerce.

Where the highest court of a State has decided that the board of equalization has acted according to the methods prescribed and authorized by

the laws of the State and that an order made by it is legal under the state constitution and statutes, the decision constitutes an interpretation of the law of the State and is not open to dispute in this court.

2. Proceedings before a board of equalization are *quasi*-judicial, and if an order made by it is within its jurisdiction, it is not void and cannot be resisted in an action at law; nor can overvaluation be made a ground of defence at law. The action of the tax officers being in the nature of a judgment must be yielded to until set aside. And this can only be done in a direct proceeding.

THE defendant in error is the tax collector of Jackson County, Mo., and brought this action against the plaintiff in error in the Circuit Court of that county for the sum of $1027.22, the taxes assessed against plaintiff in error for the year 1899, apportioned to Jackson County. The answer of the plaintiff in error alleged illegality in the taxes upon two grounds: First, that the taxes were levied upon the franchise of the plaintiff in error, derived from the United States under certain acts of the Congress; second, that the state board of equalization, intending to injure the plaintiff by compelling it to pay an excessive and disproportionate share of state and local taxes, assessed its poles, wires and instruments at far more than their actual value.

The plaintiff in error is a telegraph company, incorporated by the State of New York. It does business in the State of Missouri, having offices in a number of cities of that State, and its lines run between those cities and to and from them to other places in the Union; in other words, the plaintiff in error engages in intrastate and interstate business. It claims to have no franchises from the State of Missouri, (except in an unimportant instance,) but occupies the streets of its cities, and its public roads and highways, by authority of the act of Congress of July 24, 1866, entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes." The material part of section one of the act is as follows:

" SECTION 1. That any telegraph company now organized, or which may hereafter be organized under the laws of any State in this Union, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the

military or post roads of the United States which have been or may hereafter be declared such by act of Congress, and over, under, or across the navigable streams or waters of the United States: *Provided*, That such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads."

Section two provides that the messages between the officers and agents of the government shall have priority, and be sent at rates to be fixed by the Postmaster General.

Section three forbids the transfer of the rights conferred by the act.

Section four gives the United States the power to purchase the telegraph lines, property and effects of any company availing itself of the benefits of the act.

Section four is as follows:

"*And be it further enacted*, That before any telegraph company shall exercise any of the powers or privileges conferred by this act, such company shall file their written acceptance with the Postmaster General of the restrictions and obligations required by this act."

Under the constitution and laws of Missouri, the state board of equalization, composed of the governor, secretary of state, state auditor, state treasurer and attorney general, assesses railroad and telegraph property, and it also equalizes the real and personal property assessed by the local assessors. Exercising its powers of original assessment, the board made the following order in regard to the property of plaintiff in error:

"State of Missouri, office of state auditor.

"Be it remembered that heretofore, to wit, on the twenty-fifth day of July, 1899, the following, among other proceedings, were had by the state board of equalization, viz.:

"The state board of equalization having given to the Western Union Telegraph Company opportunity to be heard personally by the board, and having heard the said company, through its officers and agents, and having carefully considered the facts set out in the returns and the statements of said company, and all evidence of value, and all matters bearing upon

the question of the value of the property of said company, and considering the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the market and par value of its stocks and bonds, and the gross receipts and net earnings and franchise owned by said company, and the value thereof, and having received evidence concerning the value of the cost of construction of said telegraph line, and the market value and par value of the stocks and bonds, and the gross receipts and net earning power, and the franchise and value thereof, and having heard evidence upon and considering all other matters ascertainable by said board bearing upon the question of the value of said company, which, in the opinion of the board, would assist in its findings, conclusions and judgment in arriving at the actual cash value of the property of said telegraph company; on motion the state board of equalization assesses and values for taxes of 1899 the property of said Western Union Telegraph Company at $1,827,727.45; and it is further ordered by the state board of equalization that the assessed value thereof be distributed upon the classes of property as follows :

| | |
|---|---:|
| 6075.98 miles of poles at $71.50 per mile . | $434,432 57 |
| 23,767.34 miles of wire at $22.02 per mile . | 523,356 82 |
| 3375 instruments at $5.70 each . . . | 13,537 50 |
| All other property at . . . . . | 856,400 56 |
| | $1,827,727 45" |

The apportionment of the tax to Jackson County was as follows :

| | |
|---|---:|
| For state purposes . . . . . . | $202 43 |
| For county purposes . . . . . | 283 40 |
| For road purposes . . . . . . | 35 41 |
| For general county school purposes . . | 370 61 |
| For school building purposes . . . . . | 2 98 |
| For other school purposes . . . . | 19 03 |
| For Kansas City municipal purposes . . | 81 21 |
| For Independence municipal purposes . . | 25 38 |
| For Kaw township railroad purposes . . | 2 03 |
| For Blue township railroad purposes . . | 4 74 |
| Total . . . . . . | $1027 22 |

The case was tried without a jury and the trial court found "the fact to be from the evidence and the pleadings that the defendant owned in the State of Missouri, at the time of said assessment, the poles, wires and instruments of the value hereinbefore set forth. And the court finds the fact to be from the evidence that in valuing 'all other property' of defendant the state board took into consideration the franchise of defendant company, and the court finds under the law, and so declares, that the franchise of defendant company is not subject to valuation and taxation, and as to this item of the above-named valuation the court finds the issues for the defendant."

Judgment was entered against plaintiff in error in the sum of $605.82, being the tax on the poles, wires and instruments of the company, with interest at two per cent for collectors' fees, and also for an attorney's fee. The amount found due was made a first lien against the property of defendant in error, and special execution ordered to be issued. Both parties moved for a new trial, which motions were denied. Both parties then appealed to the Supreme Court of the State, which court reversed the judgment of the Circuit Court. After an elaborate discussion of the case the Supreme Court said:

"It follows that the judgment of the Circuit Court holding that the tax assessed against 'all other property at $856,400.56' to be unlawful, is erroneous, and that the plaintiff is entitled to a judgment for the whole amount of the tax sued for. Judgment is accordingly entered, here, for the plaintiff, for $1027.22, back taxes for the year 1899, with interest thereon from the first of January, 1900, at the rate of one per cent per month, Rev. Stat. 1899, sec. 9225, and costs." 165 Missouri, 502.

This writ of error was then sued out. Other facts appear in the opinion.

*Mr. John F. Dillon* and *Mr. Eleneious Smith,* with whom *Mr. Alexander New* and *Mr. Henry D. Estabrook* were on the brief, for plaintiff in error.

I. The Western Union Telegraph Company is an agent of the government and an instrument of interstate commerce;

and its franchises exercised in Missouri having been derived
solely from the Federal government are exempt from taxation
by the taxing authorities of the State. *Pensacola Tel. Co.* v.
*West. U. Tel. Co.*, 96 U. S. 1.; *Telegraph Co.* v. *Texas*, 105 U.
S. 460 ; *California* v. *Pacific R. R.*, 127 U. S. 1 ; *San Fran-
cisco* v. *West. U. Tel. Co.*, 96 California, 140 ; *C. P. R. R.* v.
*California*, 162 U. S. 91 ; *Wabash Ry. Co.* v. *Illinois*, 118 U.
S. 557; *Railroad Co.* v. *Peniston*, 18 Wall. 5 ; *Leloup* v. *Port
of Mobile*, 127 U. S. 640 ; *Robbins* v. *Taxing Dist.*, 120 U. S.
493 ; *Phil. S. S. Co.* v. *Pennsylvania*, 122 U. S. 344 ; *West. U.
Tel. Co.* v. *Pendleton*, 122 U. S. 358.

II. The state board of equalization has discriminated against
plaintiff in error and in favor of other persons generally. The
board, in order to discriminate as aforesaid, fixed the value of
the property of the Western Union Telegraph Company for
taxation at far more than its full actual cash value and inten-
tionally equalized and adjusted the values of other property
throughout the State at 40 per cent of the actual cash value
thereof. The necessary effect of all of which has been that
the said company has been discriminated against in violation
of the Fourteenth Amendment to the Constitution of the Uni-
ted States. *Pelton* v. *National Bank*, 101 U. S. 143 ; *Cum-
mings* v. *National Bank*, 101 U. S. 153 ; *National Bank* v. *Kim-
ball*, 103 U. S. 732 ; *State ex rel.* v. *Cunningham*, 153 Missouri,
642 ; *State ex rel. Wright* v. *St. L. I. M. & S. Ry. Co.*, 82 Mis-
souri, 683 ; *State ex rel.* v. *Davis*, 131 Missouri, 457 ; *Railroad
Co.* v. *State*, 64 Missouri, 294 ; *State* v. *Hannibal & St. Joseph
R. R. Co.*, 75 Missouri, 208 ; *Ward* v. *Board of Equalization*,
135 Missouri, 309 ; *House* v. *Clinton Co. Court*, 67 Missouri,
522 ; *State ex rel.* v. *Board of Equalization*, 108 Missouri, 235 ;
*State ex rel.* v. *Vaile*, 122 Missouri, 33 ; *People* v. *State Board
of Equalization*, 191 Illinois, 528 ; *Ex parte Ft. Smith & Van
Buren Bridge Co.*, 62 Arkansas, 461 ; *Los Angeles Co.* v. *Bal-
lerino*, 99 California, 597 ; *Pacific Postal Co.* v. *Dalton*, 109 Cali-
fornia, 604 ; *Randall* v. *City of Bridgeport*, 63 Connecticut,
321 ; *Board of Supervisors* v. *Railroad Co.*, 44 Illinois, 229 ;
*Iowa & Dakota Tel. Co.* v. *Schauber*, (Iowa) 91 N. W. Rep. 78 ;
*C. B. & Q. R. Co.* v. *Board of Comrs.*, 54 Kansas, 786 ; *Mer-*

*rill* v. *Humphrey*, 24 Michigan, 170; *Walsh* v. *King*, 74 Michigan, 350; *State ex rel.* v. *Savage*, (Nebraska) 91 N. W. 557; *Manufacturing Co.* v. *Strafford*, 51 N. H. 455; *Manchester Mills* v. *Manchester*, 58 N. H. 38; *Mercantile Nat. Bank* v. *Mayor, etc., of New York*, (N. Y.) 64 N. E. 756; *City of Chattanooga* v. *Railroad Co.*, 7 Louisiana, 563; *Weeks* v. *City of Milwaukee*, 10 Wisconsin, 242; *Hersey* v. *Supervisors*, 16 Wisconsin, 185; *Lefferts* v. *Supervisors*, 21 Wisconsin, 688; *Iron Co.* v. *Hubbard*, 29 Wisconsin, 52; *Hersey* v. *Board of Supervisors*, 37 Wisconsin, 75; *Railroad Tax Cases*, 13 Fed. Rep. 722; *Second National Bank* v. *Caldwell*, 13 Fed. Rep. 429; *In re Watson*, 15 Fed. Rep. 511; *California Tax Cases*, 18 Fed. Rep. 385; *State of Indiana* v. *Putnam Palace Car Co.*, 16 Fed. Rep. 193; *Dundee Mortgage Co.* v. *School Dist. No. 1*, 21 Fed. Rep. 151; 24 Fed. Rep. 197; *Taylor* v. *Louisville & Nashville R. R. Co.*, 85 Fed. Rep. 302; 88 Fed. Rep. 350; *Chicago Union Traction Co.* v. *State Board of Equalization*, 114 Fed. Rep. 557; Cooley on Taxation, 2d ed. pp. 748–785; Judson on Taxation, sec. 478; Welty on Assessments, sec. 186.

III. Where discrimination of the character mentioned under point II exists, it amounts to fraud in law and a denial of the equal protection of the law and the courts will grant relief. Likewise where lack of jurisdiction to make the assessment is shown. Authorities under point II, and *State ex rel.* v. *Vaile*, 122 Missouri, 33; *State ex rel. Love* v. *Railroad*, 121 Missouri, 12; *Black* v. *McGonigle*, 103 Missouri, 192; *State ex rel. Morris* v. *Cunningham*, 153 Missouri, 642.

IV. In all cases where franchises such as those possessed by the Western Union Telegraph Company have been considered in estimating the value of property assessed and such assessments have been sustained, statutes providing for the assessment of corporations under a "unit" system have contained express and detailed provisions for correctly ascertaining the valuation of the property to be assessed. No such provisions are found in the laws of Missouri. The "ways and means" for any such assessment have not been prescribed. Furthermore, the statutes of Missouri exclude any such mode of assessment of telegraph companies. *West. U. Tel. Co.* v. *Massa-*

*chusetts*, 125 U. S. 530 ; *Massachusetts* v. *West. U. Tel. Co.*, 141 U. S. 40 ; *W. U. Tel. Co.* v. *Taggart*, 163 U. S. 1 ; *State Railroad Tax Cases*, 92 U. S. 575 ; *Pullman Co.* v. *Penn.*, 141 U. S. 18 ; *Adams Ex. Co.* v. *Ohio*, 165 U. S. 194, and on rehearing, 166 U. S. 185 ; *Bridge Co.* v. *Kentucky*, 166 U. S. 150 ; *St. Louis* v. *Wennecker*, 145 Missouri, 238.

V. The franchise of a corporation "to be " a corporation is not taxable in a foreign State in which it is licensed to do business. *London & S. F. Bank* v. *Block, Collr.*, 117 Fed. Rep. 900.

*Mr. Hunter M. Meriwether,* with whom *Mr. Robert E. Ball* was on the brief, for defendant in error.

I. The franchises, in the sense of intangible property, as well as the poles and wires of the Western Union Telegraph Company, are taxable by the several States. Such franchise taxes have been sustained in all recent cases by the Supreme Court of the United States against this defendant, and others similarly situated. *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530 ; *Massachusetts* v. *Western Union Tel. Co.*, 141 U. S. 1–40 ; *Central Pacific Ry. Co.* v. *California*, 162 U. S. 91 ; *Western Union Tel. Co.* v. *Norman*, 77 Fed. Rep. 13 ; *Western Union Tel. Co.* v. *Taggart*, 162 U. S. 1 ; American & English Ency. of Law, vol. 25, p. 873 ; *Adams Express Co.* v. *Ohio*, 166 U. S. *loc. cit.* 220 ; *Commonwealth* v. *Western Union Tel. Co.*, 2 Dauph. (Pa.) 40 ; *Michigan Tel. Co.* v. *City of Charlotte*, 93 Fed. Rep. 11 ; *Keokuk & H. Bridge Co.* v. *Kentucky*, 175 U. S. 626 ; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 154 ; *Louisville Tobacco Warehouse Co.* v. *Commonwealth*, 49 S. W. 1069 ; *Commonwealth* v. *Manor Gas Co.*, 188 Pa. St. 195 ; *Wier* v. *Norman*, 166 U. S. 171.

II. The assessment made by the state board was an assessment of the property of plaintiff in error, and did not include or in any way affect the right to exist and transact its business in Missouri or elsewhere. The tax is strictly a property tax, and having been fairly and legally assessed upon a reasonable valuation of the property, should be sustained. *National Bank* v. *Commonwealth*, 9 Wall. 353 ; *Railroad Co.* v.

*Peniston*, 18 Wall. 5, *loc. cit.* 30 ; *Commercial Electric Light Co.* v. *Judson*, 56 Pac. Rep. (Wash.) 829 ; *Louisville Ry. Co.* v. *Commonwealth*, 49 S. W. 486 ; *Paducah St. Ry. Co.* v. *McCracken*, 49 S. W. 178 ; *Owensboro National Bank* v. *City of Owensboro*, 173 U. S. 664 ; *Commonwealth* v. *Manor Gas Co.*, 2 Dauph. (Pa.) 128 ; *New York* v. *Roberts*, 171 U. S. 658.

III. There is a clear distinction between a license tax and a property tax. The former involves a charge for permission or authority to transact certain business, while the latter is a contribution imposed upon, and measured by the property of an individual or corporation. The State cannot impose a license, impost, or embargo on plaintiff in error, even though it be called a tax. But it can take from the property owned by plaintiff in error within the jurisdiction of the State, a sufficient amount to pay its just proportion of its governmental expenses. Nothing else having been attempted the tax should be sustained. Cooley on Taxation, 2d ed. pp. 383, 576 ; Burroughs on Taxation, sec. 77, p. 146 ; sec. 85, p. 169 ; Judson on Taxation, p. 130 ; *Welton* v. *Missouri*, 91 U. S. 275 ; *State* v. *Emment*, 103 Missouri, 241 ; *Emment* v. *Missouri*, 156 U. S. 296.

IV. The action of the state board in valuing and assessing the property of the plaintiff in error is not subject to review or attack in this proceeding. Cooley on Taxation, 2d ed. p. 748 ; Burroughs on Taxation, p. 238 ; *Hamilton* v. *Rosenblat*, 8 Mo. App. 237 ; *Yazoo & M. V. R. R. Co.* v. *Adams*, 25 So. Rep. 355 ; *Home Ins. Co.* v. *Lynch*, 56 Pac. Rep. 681 ; *Danforth* v. *Livingston*, 23 Montana, 558 ; *City of Elizabeth* v. *New Jersey Jockey Club*, 44 N. J. App. 207 ; *Dayton* v. *Multnomah*, 55 Pac. Rep. 23 (Oregon) ; *Ledoux* v. *Le Bee*, 83 Fed. Rep. 761 ; *McLeod* v. *Receiver*, 71 Fed. Rep. 455 ; 18 C. C. A. 188 ; *Brooklyn R. R. Co.* v. *City*, 38 N. Y. Supp. 154 ; *State ex rel.* v. *Springer*, 134 Missouri, 212.

MR. JUSTICE MCKENNA, after stating the facts, delivered the opinion of the court.

1. On the question of fact, if it be such, as to what constituted the item " of other property at $856,400.56," in the

assessment by the board of equalization, the trial court and the Supreme Court of the State, are not in accord. The trial court found the "fact to be from the evidence that in valuation 'of other property' of defendant, the state board took into consideration the franchise of defendant company." It is apparent from the court's opinion that by franchise the court meant the rights and privileges obtained by the plaintiff in error under the act of Congress of July 24, 1866. The Supreme Court of the State, however, expressed its conclusion from the evidence, as follows:

"So that, when, in determining the value of the property of the defendant in this State, the board of equalization took into consideration 'the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the par value of its stock and bonds, and the gross receipts and net earnings and franchises owned by said company, and the value thereof,' it did not and could not have included therein any franchise derived by the defendant from the government of the United States, because that government had conferred no such franchise; nor was such a valuation placed upon 'all other property,' a tax upon the franchise of the defendant company. The franchise derived by the defendant from the State of New York was considered by the board in determining the value of the property of the defendant located in this State. That is, that property was valued, not as so many poles, so much wire, so many instruments or so much 'other property' in the abstract, but was valued in the concrete, in the relation that such property in the abstract bore to other property in the abstract, which being brought into relation towards each other—into a *system*, located partly in this State and partly in other States—gave each part a concrete value, which was much greater than its abstract value. The right to exist—the franchise—of the defendant was property, and was subject to taxation, either directly, in the proportion that the portion of the franchise exercised in this State bore to the proportion of the franchise exercised in all other States, or indirectly, as was done in Massachusetts and as was done here, by being impressed upon the

tangible property owned by it, thereby increasing its value, and by considering the franchise and its tangible property as a system, and then assessing the part of the property forming a part of the system and located in Missouri as of its proportionate value of the whole property constituting the system."

Plaintiff in error asserts the correctness of the finding of the trial court, and insists that it is the only finding that could have been made, and bases the argument against the taxes assessed on that insistence. But if the finding on the question is one of fact, necessarily we are bound by that made by the Supreme Court of the State. The trial court picked out the rights given to the defendant under the act of Congress, denominated them a franchise, contemplated the franchise as a distinct proprietary entity, and, because it was derived from the Federal government, decided that it was exempt from taxation. The necessary consequence was and is to destroy the relation between that franchise and the other properties of the plaintiff in error, regarding them, not as parts of the system, but abstractly—regarding the poles not differently from other poles, the wire not differently from other wire. The Supreme Court, on the contrary, regarded the properties as related and as constituting a system, and because of their relation having a value greater than the sum of the values of the individual things regarded merely as such. Viewing the order of the board of equalization, as the Supreme Court viewed it, was it valid? In other words, is the State in exercising its taxing power limited to assessing the mere material things used by the plaintiff in error, and must it regard them as of no greater value than they had when they reposed in lumber yards and factories, with cost added of putting them in place? Or the proposition may be stated another way, which better expresses the ultimate contention of the plaintiff in error. Conceding that the tangible property of the telegraph company derives value from its use in a system, does the company do business in the State in pursuance of the Constitution of the United States and the act of July, 1866, and become thereby an instrument of interstate commerce and a government agent, and as such exempt from the taxation contested in this case? We think the question has been answered by this court.

In *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530, the effect of the act of July, 1886, upon the power of the State to tax the property of telegraph companies was considered. The laws of Massachusetts imposed a tax upon the Western Union Telegraph Company on account of the property owned and used by it within that State, the value of which was ascertained by comparing the length of its lines within the State with the length of its entire lines. The tax was sustained. The act of July, 1866, was urged against the tax as it is urged here.

The contention of the company in that case was, as it is in this, that it did not derive its existence from the taxing State but from the State of New York; that it did not do business in the taxing State by permission of that State, but by virtue of being an instrument of interstate commerce; that its rights and privileges and franchises were conferred by the United States and constituted it an agent of the United States, and as such agent it was exempt from the tax imposed. The contentions were rejected. The court did not test or measure the power of the State by the name which its laws gave the tax, and, speaking by Mr. Justice Miller, said:

" The argument is very much pressed that it is a tax upon the franchise of the company, which franchise being derived from the United States by virtue of the statute above recited cannot be taxed by a State, and counsel for appellant occasionally speak of the tax authorized by the law of Massachusetts upon this as well as all other corporations doing business within its territory, whether organized under its laws or not, as a tax upon their franchises. But by whatever name it may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation. The laws of that Commonwealth attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein."

And that power of the State was explained in an elaborate opinion and sustained. These propositions were laid down:

That the company owed its existence as a corporation and its right to exercise the business of telegraphy to the laws of the State under which it was organized; that the privilege of running the lines of its wires over and along the military and post roads of the United States was granted by the act of Congress, but that the statute was merely permissive and conferred no exemption from the ordinary burdens of taxation; that the State could not by any specific statute prevent a corporation from placing its lines along the post roads or stop the use of them after they were so placed, but the corporation could be taxed in exchange for the protection it received from the State "upon its real or personal property as any other person would be." And describing the particular tax imposed it was said:

"The tax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts, and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by section 5263 of the Revised Statutes, or by the commerce clause of the Constitution."

In other words, the lines in Massachusetts were regarded as a part of a system and assessed accordingly.

The statute of Massachusetts came up again for consideration in *Massachusetts* v. *Western Union Telegraph Co.*, 141 U. S. 40, and the principles announced in *Western Union Telegraph Co.* v. *Massachusetts, supra,* were affirmed and followed. See also *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411; *Leloup* v. *Port of Mobile,* 127 U. S. 640.

These cases establish that in estimating the value of the property of a telegraph company situate within a State it may be regarded not abstractly or strictly locally, but as a part of a system operated in other States, and that the State was not precluded from taxing the property because the State had not created the company or conferred franchise upon it, or because it derived rights or privileges under the act of July, 1866, or

was engaged in interstate commerce.   Every one of the funda-
mental propositions,· therefore, contended for by plaintiff in
error, those decisions declare unsound.       ·  ·

But it is contended that the method of assessment followed
in those cases was sustained because they were prescribed by
the legislature, and that in the case at bar the method adopted
was not prescribed or authorized by the laws of Missouri.   The
answer is obvious.   What the laws of Missouri authorized was
competent for the Supreme Court of Missouri to decide, and it de-
cided that the order of the board of equalization was legal under
the constitution and statutes of the State.   The decision, con-
stituting as it does an interpretation of the constitution and laws
of the State, is not open to dispute here.   If it were, it would
seem incontestable that the State could either prescribe the
method or confer upon its taxing officers the power to adopt a
suitable one.   And there is nothing in the *Adams Express Com-
pany cases*, 166 U. S. 171 ; 166 U. S. 185, 226, to the contrary.

2.  The plaintiff in error asserts that the board of equalization
practiced discrimination against it by assessing at a value dis-
proportionate to the value assessed on real and personal
property by local assessing officers.   This defence was expressed
as follows :

"Defendant avers that under the law it was the duty of
said board of equalization to adjust and equalize as aforesaid
the valuation of all real and personal property in the State of
Missouri, among the several counties in the State, and that
during the period aforesaid it did so proceed to adjust and
equalize such valuations.   That said state board of equalization,
by common arrangement, understanding and purpose among
themselves, in fact did, during the period aforesaid, in violation
of the constitution and laws of said State of Missouri, with intent
to compel defendant to pay a greater proportion of taxes than the
owners of other real and personal property in said State of Mis-
souri, assess all property, to wit, other than the property of the
telegraph companies, to wit, from thirty-five to forty per cent of
its true value, whereby as to taxes levied upon real and personal
property other than telegraph property in the State of Missouri,
this defendant was unlawfully and wrongfully discriminated

against to the extent of sixty per cent of the amount of taxes assessed by said state board of equalization and levied by the taxing officers of the State upon defendant in pursuance of such assessment."

Testimony was introduced to sustain the averments.

The Supreme Court of Missouri held, however, that plaintiff in error could not, even under the cases cited by it, avail itself of the defence. The court said:

"The defendant cannot avail itself of these cases, for the reasons, first, that it seeks to raise the question of discrimination by a defence to an action at law to collect the taxes, and thereby collaterally attacks the judgment of the board of equalization; second, that such questions can only be raised by a direct attack, in equity, and then only upon the condition precedent that it pays or tenders the amount justly due and only asks to have the collection of the excess restrained. This the defendant has not done in this case. It simply alleges a discrimination or excessive tax, and then seeks to defeat the whole assessment without paying or tendering anything, notwithstanding it admits by its answer and its proofs that it has property in this State subject to taxation of the value of $541,472.40. Upon the authority of the cases relied on by it, this cannot be done."

We concur in this view. The proceedings before the board were *quasi* judicial, and the order made by it was within its jurisdiction. It was not void on its face, and cannot be resisted in an action at law. This is the principle announced in the case referred to. In *Stanley* v. *Supervisors of Albany*, 121 U. S. 535, is cited, among other cases, *Balfour* v. *City of Portland*, 28 Fed. Rep. 738. The case is especially pertinent. The action was at law for the recovery of taxes paid under protest which had been levied upon property which, it was charged, had been deliberately overvalued. Recovery was denied. The Circuit Court said:

"The property was subject to taxation by the authority and for the purpose alleged. True, the result reached was erroneous, because of the willful disregard in the proceeding of the law requiring uniformity in the valuation of property for taxation

within the jurisdiction of the defendant.    Still, the proceeding being *quasi* judicial, and the subject matter within the jurisdiction of the officers who conducted it, the result reached is so far conclusive that the legality of it cannot be questioned in an action at law to recover back the one half of the tax as illegal."

So this court said in *Stanley* v. *Supervisors, supra:*

" It is only where the assessment is wholly void, or void with respect to separable portions of the property, the amount collected on which is ascertainable, or where the assessment has been set aside as invalid, that an action at law will lie for the taxes paid, or for a portion thereof.    Overvaluation of property is not a ground of action at law for the excess of taxes paid beyond what should have been levied upon a just valuation.    The courts cannot, in such cases, take upon themselves the functions of a revising or equalizing board.    *Newman* v. *Supervisors*, 45 N. Y. 676, 687 ; *National Bank of Chemung* v. *Elmira*, 53 N. Y. 49, 52 ; *Bruecher* v. *The Village of Portchester*, 101 N. Y. 240, 244 ; *Lincoln* v. *Worcester*, 8 Cush. 55, 63 ; *Hicks* v. *Westport*, 130 Massachusetts, 478 ; *Balfour* v. *City of Portland*, 28 Fed. Rep. 738."

And we think overvaluation of property cannot be a ground of defence at law.    In other words, the action of the tax officers, being in the nature of a judgment, must be yielded to until set aside.    This can only be done in a direct proceeding.    The property owner is in effect a plaintiff, and the condition of relief against the enforcement of the *quasi* judicial order, which he attacks, is a tender of payment of the taxes that he ought to pay.    And this condition would still be upon him if he set up overvaluation as an equitable defence to an action brought against him.    *County of Los Angeles* v. *Ballerino*, 99 California, 593, 597.    This certainly would be so in Missouri, under the doctrine expressed by the Supreme Court of the State in the case at bar.

*Judgment affirmed.*

MR JUSTICE BREWER concurs in the result.

MR. JUSTICE WHITE and MR. JUSTICE PECKHAM dissent.