WESTERN UNION TELEGRAPH CO. v. WRIGHT, Comptroller General.

(Circuit Court of Appeals, Fifth Circuit. October 3, 1910.)

No. 1,928.

**1. FRANCHISES (§ 1*)—NATURE OF FRANCHISE.**

A franchise is a grant of right by public authority, the main element of which is, in general, "permission" to do something which otherwise the grantee would not have the right to do.

[Ed. Note.—For other cases, see Franchises, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 3, pp. 2929–2942; vol. 8, p. 7666.]

**2. TAXATION (§ 8*)—POWERS OF STATE—TELEGRAPH COMPANIES—FRANCHISE GRANTED BY UNITED STATES.**

Whatever franchise or right a telegraph company acquires from the United States by its acceptance of the provisions of Act July 24, 1866, c. 230, 14 Stat. 221 (U. S. Comp. St. 1901, p. 3579), giving such companies the right to use the military or post roads of the United States, etc., is exempt from taxation by a state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 21; Dec. Dig. § 8.*]

**3. TAXATION (§ 376*)—POWERS OF STATE—FRANCHISE OF TELEGRAPH COMPANY.**

Act Ga. Dec. 16, 1902 (Laws 1902, p. 37), provides for the imposition of a franchise tax on all corporations, domestic and foreign, which exercise any special right or privilege within the state not allowed by law to natural persons. The state board of appraisers, in making an assessment thereunder of a franchise tax against a telegraph company doing an interstate business, and which had accepted the provisions of Act July 24, 1866, c. 230, 14 Stat. 221 (U. S. Comp. St. 1901, p. 3579), expressly found that the company maintained and operated its lines in the state under the franchise given it by such act, and stated that "our finding is therefore based upon and includes the value of the franchise conferred by the act of Congress." All tangible property of the company within the state was separately assessed and taxed under a different statute. *Held*, that the finding of the board was conclusive as to the basis on which the tax was assessed, and, since the assessment contained an element of unknown amount which was not taxable, the tax based thereon was illegal and void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** Taxation (§ 40*)—Constitutionality of Tax—Excessive and Discriminatory Taxation.

> Where the net profit of a telegraph company for a year on all its business within a state, and passing into, from, or through the state, was less than $2,000, the valuation of its franchise by the state for taxation at $950,000, in addition to a tax upon all of its tangible property, was excessive, discriminatory, unjust, and unconstitutional.

> [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. § 40.*]

> Shelby, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

Suit in equity by the Western Union Telegraph Company against William A. Wright, Comptroller General of the State of Georgia. Decree for defendant (166 Fed. 954), and complainant appeals. Reversed.

Albert Howell, Jr., for appellant.
J. D. Kilpatrick and John C. Hart, for appellee.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

PARDEE, Circuit Judge. The appellant's bill for an injunction restraining the collection of a tax upon its franchise was met in the court below by a general demurrer, which was sustained, and thereupon the bill was dismissed, and therefore on this appeal the facts well pleaded in the bill are to be taken as true and undisputed. For this opinion the leading facts may be summarized as follows:

The complainant, the Western Union Telegraph Company, is a corporation created under the laws of the state of New York, and is engaged in conducting an interstate telegraph business for the transmission of telegraphic dispatches over its lines, which extend through all the states of the United States. All of its property, equipment, and lands within the state of Georgia are engaged and used in the transaction of interstate commerce.

The company has duly accepted the benefit of the act of Congress, approved July 24, 1866, entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," the purpose of said act being to secure to the government of the United States preferential and economical use of the lines of such telegraph companies as might accept the provisions of the act, and to secure the right to purchase at option all the accepting company's telegraph lines and property under terms stipulated therein. Said act provides that any telegraph company accepting said act shall have the right to construct, maintain, and operate its lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States, and over or under or across the navigable streams or waters of the United States, and shall also have the free right to take and use from the public

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lands all necessary stone, timber, and other material for its posts, piers, stations, and other needful uses in the construction, maintenance, and operation of said lines of telegraph, and pre-empt and use such portion of unoccupied public lands subject to pre-emption, through which their said lines of telegraph might be located, as might be necessary for its stations.

The said company, having accepted the restrictions and obligations required by said act, is compelled to afford telegraphic communication between the several departments of the government of the United States and their officers and agents priority over all other business, and has forfeited and relinquished its right to charge the usual and customary rates for its services so rendered, and is compelled to accept for such service only such compensation as may be fixed by the Postmaster General of the United States. The said company has constructed and does now maintain and operate all of its lines of telegraph within the state of Georgia under and by virtue of the rights and franchises conferred by said act of Congress.

In the year 1907 said company was assessed upon all its tangible property of every kind and description, taxable in the state of Georgia, in the sum of $796,000, the taxes upon which have been duly tendered (admitted in the argument to have been fully paid), and in addition to said assessment, under the law of the state of Georgia approved December 16, 1902 (Laws 1902, p. 37), entitled "An act to provide for and require the payment of taxes on franchises," etc., it was further assessed on its franchise in the sum of $950,000. The important provisions of the above-mentioned act are found in sections 1 and 9, which read as follows:

"Section 1. Be it enacted by the Senate and House of Representatives of the state of Georgia in General Assembly met, that the term 'special franchise,' as used in this act, shall include every right and privilege exercised within this state granted to any person, partnership or corporation by the state or its authority, or by any county or county officer, or officers, or any municipal corporation or officer thereof, for the exercise of the power of eminent domain, or for the use of any public highway or street, or the land above or below any highway or street within the limits of said state, and every special right exercised within this state granted by charter, resolution, by-law, statute or otherwise, whether under the laws of this or any other state, for the exercise of any public service, such as the construction and operation of railroads equipped for steam, electricity, horse-power, compressed air, or otherwise, for the common carrying of passengers or freight; the construction or operation of any plant or plants for the distribution and sale of gas, water, electric lights or power, steam heat, refrigerated air, or other substances by means of wires, pipes or conduits made under or above any street, alley or highway, or the construction and operation of any telephone or telegraph plant; all rights to conduct wharfage, dockage or cranage business; the conduct of any express business or the operation of sleeping, palace, dining or chair-cars; all rights and privileges to construct, maintain or operate canals, toll roads or toll bridges; the right to carry on the business of maintaining equipment companies, navigation companies, freight or passenger depots, and every other like special function dependent upon the grant of public powers or privileges not allowed by law to natural persons or involving the performance of any public service, not including the mere right to be a corporation by trading or manufacturing, or other corporation exercising no special franchise above enumerated."

"Sec. 9. Be it further enacted by the authority aforesaid, that nothing in this act contained shall be held, taken or construed to exempt from taxation

any franchise not enumerated in this act; but all franchises of value not provided for in this act shall be returned for taxation and taxed as other property under the present laws."

The board of arbitrators making aforesaid further assessment expressly included therein the following:

"In fixing the value of the franchise under which the Western Union Telegraph Company constructed and maintains and operates its line of telegraph in Georgia, we have been unable to designate or set apart the value of the federal franchise under which the testimony shows the company operates in Georgia, and our finding is therefore based upon and includes the value of the franchise conferred by the act of Congress of June, 1866. Whether the company is, or is not, liable to taxation upon the value of the federal franchise, is not a matter for the determination of this board; its function being merely to find the value of such franchise."

Said board of arbitrators, in determining the value of said franchise, considered evidence with reference to the income of appellant from its entire business.

The appellant's contention on the foregoing facts is that it has been unlawfully assessed, and taxes are demanded, on its franchise derived from its acceptance of the provisions of the act of Congress of 1866, and that such franchise is not taxable in and by the state of Georgia. The appellee apparently admits that a federal franchise is not taxable in and by the state of Georgia, but contends that the franchise claimed by the appellant under the act of Congress of 1866 is a mere permissive franchise, and that in fact the appellant is doing business in the state of Georgia under its franchise derived from the state of New York, which is taxable in Georgia; and, while the board of arbitrators, in determining the values of the appellant's franchise, returned that they included therein the value of the federal franchise, "under which the testimony shows the company operates in Georgia," the said board acted erroneously and under a misapprehension of the true facts of the case, which are that the appellant takes nothing from the act of 1866, and that it really operates its telegraph lines in the state of Georgia under its New York charter; and appellee broadly contends that the acceptance of the provisions of the act of 1866 relieves no telegraph company from any state taxation on franchise, although returned as an element of the value assessed.

The act of 1902, under which the assessment complained of was made, provides for a tax on franchises, rights, and privileges, and not upon tangible property, income, business, or capital. A franchise is a grant of right by public authority, the main element of which is, in general, "permission" to do something which otherwise the grantee would not have the right to do. As to what are franchises, see California v. Railroad Company, 127 U. S. 40, 41, 8 Sup. Ct. 1073, 32 L. Ed. 150.

The bill expressly avers, and so far as it is an issuable fact the demurrer admits, that the appellant "has constructed, and continued to and does now maintain and operate, all of its lines of telegraph within said state of Georgia under and by virtue of the rights and franchises conferred by said act of Congress." That the board of arbitrators, in their finding and return, acted under a misapprehen-

sion of the true facts of the case, is an assumption directly in contradiction of the admitted facts, and it is not supported by any state of facts of which the court can take judicial notice. That the board acted erroneously is the cause of this suit.

That the appellant operates its lines in the state of Georgia under its charter obtained from the state of New York may be true to the extent that from such charter it gets its right to be a corporation and to do business as a telegraph company; but, considering that the state of New York can grant no franchises to be exercised in the state of Georgia, the fact undoubtedly is that the appellant is operating its lines of telegraph, collecting tolls, etc., in the state of Georgia, under its New York charter to be a corporation and such franchises as it has, by the acceptance of the provisions of the act of Congress of 1866, and the consent given by acquiescence accented by regulation in the state of Georgia, so that it is reasonably clear that the only franchise or real right that the appellant has to do telegraphic business in the state of Georgia is whatever right it may have under the act of Congress of 1866 and the implied consent of the state of Georgia.

The main reliance of the court below and of the learned Attorney General is that, notwithstanding the act of 1866, telegraph companies accepting the same are not relieved from state taxes on their franchise, no matter under what guise the same may be levied, either as franchise eo nomine, income, business, or capital, although the value of the federal franchise may be an element entering into the assessment upon which the tax is to be levied. The authorities relied upon to sustain this proposition are Western Union Telegraph Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; Massachusetts v. Telegraph Co., 141 U. S. 40, 11 Sup. Ct. 889, 35 L. Ed. 628; Postal Telegraph Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311; Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; Western Union Telegraph Company v. Gottlieb, 190 U. S. 412, 23 Sup. Ct. 730, 47 L. Ed. 1116; Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636.

In the leading case, Telegraph Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790, it is decided that the privileges conferred upon telegraph companies by the act of Congress of July, 1866, carries with it no exemption from the ordinary burdens of taxation in a state within which they may own or operate lines of telegraph. In the opinion of Mr. Justice Miller the decision of the court is sustained on authorities cited and by sound argument and elaborate reasoning, with illustration, the effect of which may be to minimize the value of the rights granted telegraph companies under the act of 1866; but nowhere in the opinion is there a suggestion that the federal right actually granted is taxable by any state wherein the accepting telegraph company operates its lines.

From Massachusetts v. Western Union Telegraph Co., 141 U. S. 40, 11 Sup. Ct. 889, 35 L. Ed. 628, it is well to quote:

"The statutes [Pub. St. Mass. 1882, c. 13] pursuant to which the taxes now in question were assessed and sought to be collected are set forth in full in

125 U. S. 531, 534, note, and the material provisions of them are as follows: By section 38, 'every corporation chartered by the commonwealth, or organized under the general laws, for purposes of business or profit, having a capital stock divided into shares' (with certain exceptions), shall annually return to the tax commissioner a list of its shareholders and the number of shares belonging to each, the amount of its capital stock, the par value and market value of the shares, and the locality and value of its real estate and machinery subject to local taxation within the commonwealth: and 'railroad and telegraph companies shall return the whole length of their lines, and the length of so much of their lines as is without the commonwealth.' By section 39, the tax commissioner shall ascertain the true market value of the shares of each corporation, and estimate the fair cash valuation of all the shares constituting its capital stock, and shall also ascertain and determine the value of its real estate and machinery subject to local taxation, and of the deductions provided in section 40. By section 40, 'every corporation embraced in the provisions of section 38 shall annually pay a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stock, as determined in the preceding section, after making the deductions provided for in this section, at a rate determined by an apportionment of the whole amount of money to be raised by taxation upon property in the commonwealth during the same current year,' 'upon the aggregate valuation of all the cities and towns for the preceding year.' 'From the valuation, ascertained and determined as aforesaid, there shall be deducted: First, in case of railroad and telegraph companies, whose lines extend beyond the limits of the commonwealth, such portion of the whole valuation of their capital stock, ascertained as aforesaid, as is proportional to the length of that part of their line lying without the commonwealth, and also an amount equal to the value, as determined by the tax commissioner, of their real estate and machinery located and subject to local taxation within the commonwealth. Second, in case of other operations included in section 38 of this chapter, an amount equal to the value, as determined by the tax commissioner, of their real estate and machinery subject to local taxation, wherever situated.' By section 42, 'every corporation or association, chartered or organized elsewhere, which owns, or controls and uses, under lease or otherwise, a line of telegraph within this commonwealth' shall make all the returns prescribed by section 38, excepting the list of shareholders, 'and shall annually pay a tax, at the same rate, and to be ascertained and determined in the same manner,' as is provided in section 40. By section 54, taxes assessed under sections 40 and 42 may be recovered with interest at the rate of 12 per cent, per annum until the same are paid, by action in the name of the treasurer of the commonwealth, or by information at his relation in the Supreme Judicial Court.  *    *    *

"The effect of the statutes complained of is that every telegraph company, whether incorporated in Massachusetts or elsewhere, owning a line of telegraph in Massachusetts, is to be there taxed on such proportion only of the whole value of its capital stock as the length of its line in Massachusetts bears to the whole length of its lines everywhere; and to prevent its whole tax in Massachusetts from amounting in any event to more than that, it is provided that from the taxable portion of the value of its capital, so ascertained, shall be deducted the value of any property owned by it in Massachusetts which is subject to local taxation in the cities and towns. Such being the real state of the case, all the objections to the validity of the tax are met and disposed of by the decision of this court in the former case between these parties. In that case, as in this, the telegraph company, while admitting that its property in the state of Massachusetts was subject to taxation there like other property, argued that, by reason of its having accepted the provisions of Act July 24, 1866, c. 230, 14 Stat. 221, now embodied in sections 5263–5269 of the Revised Statutes [U. S. Comp. St. 1901, pp. 3579–3582], and having thus acquired (section 5263) 'the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the railway or post roads of the United States, and over, under or across the navigable streams or waters of the United States,' it had a franchise from the United States which could not be

taxed by any state through which its lines ran; that the statutes of Massa-
chusetts, in terms and effect, undertook to tax the franchises of the corpora-
tion; and that the tax was unconstitutional and void, both as interfering with
interstate commerce and as being unequal and excessive.

"But this court, in answering that argument and upholding the validity of
the tax, affirmed the following propositions: The franchise of the company to
be a corporation, and to carry on the business of telegraphing, was derived,
not from the act of Congress, but from the laws of the state of New York,
under which it was organized; and it never could have been intended by the
Congress of the United States, in conferring upon a corporation of one state
the authority to enter the territory of any other state, and to erect its poles
and lines therein, to establish the proposition that such a company owed no
obedience to the laws of the state into which it thus entered, and was under
no obligation to pay its fair proportion of the taxes necessary to the support
of the government of that state. 125 U. S. 547, 548 [8 Sup. Ct. 961, 31 L. Ed.
790]. By whatever name the tax may be called, as described in the laws of
Massachusetts, it is essentially an excise upon the capital of the corporation;
and those laws attempt to ascertain the just amount which any corporation
engaged in business within its limits shall pay as a contribution to the sup-
port of its government upon the amount and value of the capital so employed
by it therein. 125 U. S. 547 [8 Sup. Ct. 961, 31 L. Ed. 790]. The tax though
nominally upon the shares of the capital stock of the company, is in effect a
tax upon that organization on account of property owned and used by it
in the state of Massachusetts; and the proportion of the length of its lines
in that state to their entire length throughout the whole country is made the
basis for ascertaining the value of that property. Such a tax is not forbidden
by the acceptance on the part of the telegraph company of the rights con-
ferred by 5263 of the Revised Statutes, or by the commerce clause of the Con-
stitution. 125 U. S. 552 [8 Sup. Ct. 961, 31 L. Ed. 790]. The statute of Mas-
sachusetts is intended to govern the taxation of all corporations doing busi-
ness within its territory, whether organized under its own laws or under
those of some other state; and the rule adopted to ascertain the amount of
the value of the capital engaged in that business within its boundaries, on
which the tax should be assessed, is not an unfair or unjust one; and the
details of the method by which this was determined have not exceeded the fair
range of legislative discretion. 125 U. S. 553 [8 Sup. Ct. 961, 31 L. Ed. 790]."

Summarized, the court's holding is that the laws of Massachusetts
in question are valid, and that a tax levied thereunder and in ac-
cordance therewith is in effect a tax upon the corporation on account
of property owned and used by it within the state, and is constitu-
tional and valid as applied to a telegraph company incorporated in
another state and which has accepted the rights conferred by act of
Congress, 1866.

It is to be noticed that the attack was against the law, with no com-
plaint as to the detail or enforcement of it, and the tax levied was
essentially an excise upon the capital of the corporation, and in effect
a tax on account of property owned and used by it in the state. Here
the complaint is not so much pressed as to the act of 1902 as it is to
the manner and resultant effect of the execution of the act; the real
gravamen being that; while all of appellant's property owned and used
in the state is otherwise taxed, the act of 1902, authorizing the taxa-
tion of franchises, is so executed by the taxing authorities as to in-
clude in the value of appellant's so-called franchise the value of the
franchise conferred by the act of Congress of 1866.

In Postal Telegraph Company v. Adams, 155 U. S. 688, 15 Sup. Ct.
268, 360, 39 L. Ed. 311, the question before the court was as to the
validity of the law of Mississippi imposing a license or privilege tax

based on mileage on each telegraph company operating within the state and in lieu of other state, county, or municipal taxes. The attack made against the law was mainly that it was a tax on interstate commerce and imposed unreasonable conditions thereon, and, while the bill in the case showed that the Postal Telegraph Company had accepted the provisions of the act of Congress of 1866, no stress seems to have been laid upon it in argument of counsel or in the opinion of the court. In the opinion, Mr. Chief Justice Fuller, citing Cleveland & Cincinnati R. R. v. Backus, 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041, says:

"Doubtless no state can add to the taxation of property the burden of a license or other tax on the privilege of using, constructing, or operating an instrumentality of interstate or international commerce, or for the carrying on of such commerce; but the value of property results from the use to which it is put, and varies with the profitableness of that use, and by whatever name the exaction may be called, if it amounts to no more than *the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto*, it is not open to attack as inconsistent with the Constitution."

In Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49, it was contended that the taxation under the law of Indiana, based upon the valuation of a telegraph company's property on the whole value of its capital stock as the length of its lines within the state bears to the length of its lines everywhere, deducting a sum equal to the value of its real estate and machinery subject to local taxation within the state, necessarily included a tax upon the franchise of the company, and, as the appellant has accepted the provisions of the act of 1866, it was necessarily a tax upon the franchise granted by that act. But the Supreme Court held to the contrary, and that the tax levied by the act was in effect a tax upon property owned and used in the state, and the method of ascertaining the value of that property was not unjust or unreasonable.

In Western Union Telegraph Co. v. Gottlieb, 190 U. S. 412, 23 Sup. Ct. 730, 47 L. Ed. 1116, it seems that the state board of equalization of the state of Missouri made the following finding or assessment against the telegraph company, to wit:

"The state board of equalization having given to the Western Union Telegraph Company opportunity to be heard personally by the board, and having heard the said company, through its officers and agents, and having carefully considered the facts set out in the returns and the statements of said company, and all evidence of value, and all matters bearing upon the question of the value of the property of said company, and considering the question of the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the market and par value of its stocks and bonds, and the gross receipts and net earnings and franchise owned by said company, and the value thereof, and having received evidence concerning the value of the cost of construction of said telegraph line, and the market value and par value of the stocks and bonds, and the gross receipts and net earning power, and the franchise and value thereof, and having heard evidence upon and considering all other matters ascertainable by said board bearing upon the question of the value of said company, which, in the opinion of the board, would assist in its findings, conclusions, and judgment in arriving at the actual cash value of the property of said telegraph company, on motion, the state board of equalization assesses and values for taxes of 1899 the property of said Western Union Telegraph Company at $1,827,727.45; and

185 F.—17

it is further ordered by the state board of equalization that the assessed value thereof be distributed upon the classes of property as follows:

| | |
|---|---:|
| 6,075.98 miles of poles, at $71.50 per mile.................. | $434,432 57 |
| 23,767.34 miles of wire. at $22.02 per mile................ | 523,356 82 |
| 3,375 instruments, at $5.70 each...................... | 13,537 50 |
| All other property at...........................·............. | 856,400 56 |
| | $1,827,727 45" |

On the claim that this was a tax on the federal franchise, the Supreme Court of Missouri concluded from the evidence as follows:

"So that when, in determining the value of the property of the defendant in this state, the board of equalization took into consideration 'the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the par value of its stock and bonds, and the gross receipts and net earnings and franchises owned by said company, and the value thereof,' it did not and could not have included therein any franchise derived by the defendant from the government of the United States, because that government had conferred no such franchise; nor was such a valuation placed upon 'all other property' a tax upon the franchise of the defendant company. The franchise derived by the defendant from the state of New York was considered by the board in determining the value of the property of the defendant located in this state; that is, that property was valued, not as so many poles, so much wire, so many instruments, or so much 'other property' in the abstract, but was valued in the concrete, in the relation that such property in the abstract bore to other property in the abstract, which being brought into relation towards each other—into a system, located partly in this state and partly in other states—gave each part a concrete value, which was much greater than its abstract value. The right to exist—the franchise—of the defendant was property, and was subject to taxation, either directly, in the proportion that the portion of the franchise exercised in this state bore to the proportion of the franchise exercised in all other states, or indirectly, as was done in Massachusetts and as was done here, by being impressed upon the tangible property owned by it, thereby increasing its value, and by considering the franchise and its tangible property as a system, and then assessing the part of the property forming a part of the system and located in Missouri of its proportionate value of the whole property constituting the system."

And Mr. Justice McKenna, for the Supreme Court of the United States, said:

"Viewing the order of the board of equalization, as the Supreme Court viewed it, was it valid? In other words, is the state, in exercising its taxing power, limited to assessing the mere material things used by the plaintiff in error, and must it regard them as of no greater value than they had when they reposed in lumber yards and factories, with cost added of putting them in place? Or the proposition may be stated another way, which better expresses the ultimate contention of the plaintiff in error. Conceding that the tangible property of the telegraph company derives value from its use in a system, does the company do business in the state in pursuance of the Constitution of the United States and the act of July, 1866, and become thereby an instrument of interstate commerce and a government agent, and as such exempt from the taxation contested in this case? We think the question has been answered by this court."

The present case decidedly differs from the Gottlieb Case in the facts and in the principles involved. In the latter, as a fact found by the court, the assessment did not and could not have included therein any franchise derived from the government of the United States, and in fact the assessment was a concrete valuation of property in Missouri

as a part of a system located in that and other states. Here the assessment is not concrete on a system, but is specifically on the appellant's franchise, and, as specifically found by the board of arbitrators, "it is based upon and includes the value of the franchise conferred by the act of Congress of July, 1866."

In none of these cases, nor in any others herein examined, do we find the Supreme Court has declared that the telegraph company, accepting the provisions of the act of Congress of 1866, can be taxed by any state on the rights or franchises given by said act. In some of the opinions the value of such franchise is minimized, but in none is it declared to be worthless or wanting in appreciable value, to such an extent that, where its value is specifically assessed for taxation, the assessment is practically on nothing and may be ignored.

In the Gottlieb Case, and also in Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636, it was held that boards of equalization and assessment created by law are quasi judicial, and their decisions in effect are res judicata, and there seems to be no good reason why the same effect should not be given to the decisions of the board of arbitrators under the laws of Georgia. It seems, therefore, that, as the bill alleges and the demurrer admits, the fact that the assessment for appellant's franchises includes the value of the appellant's rights under the act of Congress of 1866 is also res adjudicata. The reasons given by the learned judge of the Circuit Court for waiving aside and in fact ignoring this fact are not satisfactory. Whatever franchises or rights the appellant has under the act of Congress of 1866 are exempt from taxation by the taxing authorities of the state of Georgia.

There is another branch of this case that does not seem to have been considered in the court below nor stressed in this court, and the facts alleged seem to require an answer. The bill charges, and the demurrer admits, that the appellant's net profit in its business in, from, into, and through the state of Georgia for the year 1907 amounted to the comparatively small sum of $1,821.99, and the appellant charges thereon, and the demurrer admits, so far as the facts are concerned, as follows:

"35. Crediting, therefore, the entire income from complainant's business earned within the state of Georgia from its leased lines and from its intrastate business, and from its business originating out of the state, and passing into the state, and from its business originating in and passing out of the state, and from its business originating outside, passing through, and terminating outside of Georgia, on mileage fixed by the Postmaster General of the United States, complainant has been permitted to earn only the small sum of $1,821.99 on a property investment within said state assessed by said board of arbitration as tangible property worth $796,000, upon which assessment complainant has paid taxes.

"36. Complainant says that its net earnings from every branch and connection of the Georgia business has not, therefore, been sufficient to even appreciably participate in its share of the fixed charges of complainant, and has not participated at all in the earnings of dividends or profits of any kind to complainant or its shareholders, on which account complainant says that its income cannot and should not be legally considered either as property, or as an element of its property in said state, or as affecting in any way the value of its franchise.

"37. Complainant also insisted, and now contends, that if, under the law of Georgia, franchises are property, that the value of all franchises of complainant having taxable value in Georgia were considered and included in the award of complainant's tangible property for the year 1907, and that to be assessed and required to pay an additional franchise tax as such would be to require complainant to pay an additional and excessive amount of taxation on its property, which is not required of all other property in Georgia, and that the imposition of such additional tax is in violation of the express terms and provisions and of the Constitution and laws of said state, which require that all property, regardless of ownership, shall be taxed ad valorem, and at the same rate."

On this showing, the valuation of appellant's franchise for taxation of $950,000, in addition to the tax on all of its tangible property, appears to be excessive, discriminatory, and unjust. The defendant ought to answer this part of appellant's bill.

The decree of the Circuit Court is reversed, and this cause is remanded, with instructions to overrule the demurrer to the appellant's bill and thereafter proceed as equity may require.

SHELBY, Circuit Judge (dissenting). The decision of the court below (166 Fed. 954), in my opinion, is fully sustained by the Supreme Court in Western Union Telegraph Company v. Gottlieb, 190 U. S. 412, 23 Sup. Ct. 780, 47 L. Ed. 1116. The decree should be affirmed.