WESTERN UNION TELEGRAPH COMPANY V. CITY OF OMAHA
ET AL.

FILED APRIL 5, 1905.   No. 14,077.

1. **Taxation: FRANCHISE.** The word "franchise" as used in section 78, article I, chapter 77, Compiled Statutes, 1903, is a generic term and includes all rights and privileges granted to or exercised by a person, association, copartnership, joint stock company or corporation, engaged in the express, telegraph or telephone business in the state of Nebraska.

2. **Post Roads Act.** The act of congress of July 24, 1866 (14 St. at Large, p. 221, ch. 230), known as the "Post Roads Act," does not confer upon telegraph companies accepting its provisions any immunity from taxation of their property in this state, whether such property be tangible or intangible.

3. **Taxation** of franchises in this state must be by valuation and in proportion to value.

4. **Assessment.** Under the first subdivision of section 1, article IX of the constitution, the legislature has the power to direct the manner of arriving at the value of property and franchises for the purpose of taxation. Any rule or method of ascertaining the value of property or franchise adopted by the legislature that is reasonably fair and just in its operation and fairly well adapted to the attainment of the end required is sufficient, but the legislature has no power to establish an arbitrary rule or standard which has no relation to the ascertainment of value.

5. ————. The legislature may direct the manner of ascertaining the value of property and franchises, but it cannot prescribe rules that prevent the assessment of the property and franchise of a corporation on an equality with property in general in proportion to value. *State v. Karr*, 64 Neb. 514, 520.

6. **Constitutional Law.** The amount of gross receipts taken in by express, telephone and telegraph companies during the year prior to the time of assessment, taken alone, is not a reasonable and proper method of ascertaining the value of the franchises possessed by such corporations. The provision of section 78, which fixes the gross receipts as the value of the franchise, fixes an arbitrary rule not founded upon any definite relation between such receipts and the value of the franchises, and violates the constitutional requirement that franchises shall be taxed by valuation so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises.

7. **"Gross receipts"** may properly be considered as an item in estimating the value of a franchise, but such receipts standing alone are not a proper measure of such franchise value.

8. **Occupation Tax.** The legislature has power to tax the gross receipts of such corporations under the second subdivision of section 1, article IX of the constitution, providing that "it shall have power to tax * * * telegraph and express interests or business * * * in such manner as it shall direct by general law, uniform as to class upon which it operates." Such taxation however is not by valuation but is a tax upon the business of such corporations.

ERROR to the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed with directions.*

*F. A. Brogan* and *W. W. Morsman,* for plaintiff in error.

*C. C. Wright, W. H. Herdman* and *A. G. Ellick, contra.*

LETTON, C.

This action was brought by the Western Union Telegraph Company, a New York corporation, against the city of Omaha and the city treasurer thereof, to enjoin the collection of a city tax levied upon the gross receipts of said corporation for the year preceding April 1 as representing the franchise of said corporation. The petition alleges, in substance, that the plaintiff is a New York corporation; that its business is the transmission of messages by electricity over telegraph lines in, from

and to each of the states and territories of the United States, and to and from foreign countries, and that it maintains offices in the city of Omaha for the purpose of carrying on its business; that it does not own or exercise any franchise of any character derived from the state of Nebraska or from the city of Omaha; that by and under the provisions of the act of congress known as the "Post Roads Act" of July 24, 1866, the provisions of which it accepted in writing, it had the right to construct, maintain and operate its lines over any portion of the public domain, and over and along any of the military and post roads of the United States, and that since said time it has carried on its business in Omaha and in the state of Nebraska under and by virtue of the franchise, rights and privileges granted by said act; that it duly returned for taxation to the taxing officer of said city all its personal property consisting of pole lines, wire lines, telegraph instruments and other property, for assessment, but did not include in its return any franchise; that it was afterwards assessed the sum of $15,594, being the amount of its gross receipts in said city for Nebraska business in the preceding year ending April 1, 1903, as a franchise tax; that a levy of 14 mills tax on the dollar was made, thereby charging plaintiff with a tax of $218.33 on its franchise, and that defendant Hennings, treasurer of said city, is now threatening to collect said tax; that the law which fixes the value of the franchise of telegraph companies at a sum equal to the gross receipts of such companies for each current year ending April 1 in the year in which such assessment is made is a mere legislative assessment, and is in violation of section 1, article IX of the constitution of the state of Nebraska. To this petition a general demurrer was filed, which was sustained. Plaintiff elected to stand upon its petition, and the action was dismissed, from which judgment it has prosecuted error to this court.

In its brief and argument the plaintiff maintains: (1) the franchises granted to the plaintiff by the state of

37

New York to be and to do business as a corporation or artificial person do not have any situs as independent or distinct proprietary entities, and are not within the jurisdiction of, or subject to taxation in, this state. (2) The tax assailed falls within the first provision of section 1, article IX of the constitution of the state, and is void unless it be a tax "by valuation" in the sense of that provision, which it is not. (3) Sections 77 and 78 of the revenue law (art. I, ch. 77, Comp. St. 1903; Ann. St. 10476, 10477), deprive the plaintiff of its property "without due process of law" and violate the 14th amendment of the constitution of the United States.

Conceding for the sake of the argument that the franchise granted by the state of New York is not subject to assessment in this state as a distinct proprietary entity disassociated from the tangible property owned by the plaintiff, the question remains, is this franchise to be a corporation the "franchise" which is to be valued by the provisions of the act under consideration? Is it the "corporate franchise," the right granted by the state to individuals to form and be a corporate body, which is intended to be the subject of the tax?

The statutory provisions relating to the taxation of express, telephone and telegraph companies are as follows, the sections being given as in the original revenue act of 1903:

"Sec. 76. Each and every person, association, copartnership, joint stock company or corporation, engaged in the express, telegraph or telephone business in the state of Nebraska, shall be deemed and taken to be a company engaged in such respective business for the purpose of this act."

"Sec. 77. It shall be the duty of each express, telephone and telegraph company to furnish to the local assessor on his demand made of any officer or a managing agent, a true, and verified statement of its personal property, and of the gross receipts of its business in said local assessing district for the year ending April 1 of the current year,

which verification shall be by one of the general officers of said company or by the local managing agent. Said assessor may also inspect said company's books of account for his district. For each day's neglect or refusal to so furnish said statement, the company shall forfeit the sum of twenty-five dollars and for each day's refusal to furnish its books for inspection after such demand by said assessor, the company shall forfeit the sum of twenty-five dollars, to be recovered in an action in the name of the state. In case the local assessor shall not be able to come at the amount and value of said personal property and gross receipts as herein provided by reason of such company's neglect and refusal, he shall come as near such value and amount as his information shall admit of, and to such value and amount he shall add fifty per cent., and such total shall be the assessed value of the property of such company.

"Sec. 78. Each and every express, telegraph and telephone company shall be locally assessed on its tangible property wherever it shall have any such property, in this state in like manner as other personal property is assessed, and in addition thereto on the amount of the gross receipts for the year next preceding the first day of April of the current year, such gross receipts to be taken and considered in their total as an item of property and be so listed and levied against the same as other property. Such gross receipts shall represent the franchise valuation which shall not be otherwise assessed."

It requires no argument to show that the "franchise valuation" mentioned in section 78 cannot be construed to mean a "corporate franchise," the franchise to be a corporation, whether granted by this state or by the state of New York or any other state. Under the provisions of section 76, if any *individual, association* or *copartnership* engages in the express, telegraph or telephone business within the state of Nebraska, he or it incurs the same liability to pay the tax prescribed as does a corporation, hence, the "franchise," the value of which is sought to be

reached for the purpose of taxation by these sections, is
not the franchise to be a corporation, but it is the right to
do and transact express, telegraph or telephone business
within the state, and it is immaterial whether this right is
derived by virtue of an act of congress, an act of the legis
lature or by the ordinances of a municipal corporation.
The thing which is sought to be reached is the intangible
right to transact business by means of the usual visible
and tangible agencies with which the operations of such
business are carried on, independent of the value of the
instrumentalities themselves.    While the legislature has
termed this intangible property "a franchise," the concept,
the idea, might as well have been expressed by some other
name. ·It is this intangible right, which possesses value,
which is intended to be reached and valued for taxation
by these provisions, independent of the tangible property
which is otherwise assessed.    It is no doubt true that if
the word "franchise" were used in the more restricted
sense it would not embrace these privileges and rights, but
as has often been said, the word "franchise" is sometimes
used as a generic term which may include not only the
right granted by the crown in England, or by the state in
this country, to be a corporation, but the right to exercise
certain rights or privileges of a public nature which prop-
erly and in the first instance belonged to the royal pre-
rogative.

There is a clear distinction between "corporate fran-
chise" and franchises or privileges which a corporation or
individual may exercise, and it is the latter which is made
the subject of taxation by these provisions.   Such rights
as the right to take tolls upon a public highway, the right
to charge fixed rates for carrying telephone or telegraphic
messages, the business carried on by street railway cor-
porations, water works companies and like public service
corporations, are often loosely denominated franchises.
As was said by Justice Field:

"Much confusion of.thought has arisen in this case and
in similar cases from attaching a vague and undefined

meaning to the term 'franchises.' It is often used as synonymous with rights, privileges, and immunities, though of a personal and temporary character; so that, if any one of these exists, it is loosely termed a 'franchise,' and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like." *Morgan v. Louisiana,* 93 U. S. 217.

A like use of the term franchise is shown in the following quotation: The franchise made taxable by tax law, "section 2, subdivision 3, as amended by laws 1899, chapter 712, * * * does not mean the right to exercise corporate functions, but the right to use the public streets, highways, or public places (for the purpose of laying pipes or mains), either as an individual or a corporation. The right to so use the public streets, highways or public places is a property right, and it is because such property has value that the right exists to assess it. The 'franchise, right, authority or permission' (thus made taxable) * * * must mean some special privilege derived from some governmental body or some political body having authority to grant the property right sought to be taxed. It is this species of property, intangible in its nature, which the law was enacted to reach." *People v. Priest,* 77 N. Y. Supp. 382, 75 App. Div. 131.

This court held in *Lincoln Street R. Co. v. City of Lincoln,* 61 Neb. 109, 129, that the right granted to a street railway company to enter upon the streets of a city to carry on its business is only a privilege, license, or permission. That its corporate franchise emanates from the state, but that the grant by ordinance from the city is a mere license and not a franchise. Here the word fran-

chise is used in the narrower and stricter sense, but this holding does in nowise limit the authority of the legislature to use the word franchise as a generic term to include all rights and privileges granted to or exercised by an individual or a corporation engaged in a public service.

The argument that the state may not tax the intangible property of the plaintiff, on account of its right to use the public highways being derived from the post roads act, was considered in *Western Union Telegraph Co. v. Massachusetts*, 125 U. S. 530. The laws of the state of Massachusetts provided that telegraph companies should be taxed on such proportion of the value of the entire capital stock as the number of miles of line within the state of Massachusetts bore to the total number of miles in all the states and territories, after deducting the value of any property subject to local taxation in the cities and towns of the state. The state treasurer made an estimate of $750,952 as the taxable value of the shares of the corporation apportioned to that state, the tax upon which apportionment the telegraph company refused to pay. The telegraph company contended in that case, as in the instant case, that by the post roads act it had been given by congress the right to exercise its functions without being subject to taxation therefor by the state authorities. In the opinion it is said by Justice Miller:

"The argument is very much pressed that it is a tax upon the franchise of the company, which franchise being derived from the United States by virtue of the statute above recited cannot be taxed by a state, and counsel for appellant occasionally speak of the tax authorized by the law of Massachusetts upon this as well as all other corporations doing business within its territory, whether organized under its laws or not, as a tax upon their franchises. But by whatever name it may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporations. The laws of that commonwealth attempt to ascertain the just amount which any corporation engaged in business within its

limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein.  The telegraph company, which is the defendant here, derived its franchise to be a corporation and to exercise the function of telegraphing from the state of New York.  It owes its existence, its capacity to contract, its right to sue and be sued, and to exercise the business of telegraphy, to the laws of the state under which it is organized.  But the privilege of running the lines of its wires 'through and over any portion of the public domain of the United States,     *   *   *   and over, under, or across the navigable streams or waters of the United States,' is granted to it by the act of congress.  This, however, is merely a permissive statute, and there is no expression in it which implies that this permission to extend its lines along roads not built or owned by the United States, or over and under navigable streams, or over bridges not built or owned by the federal government, carries with it any exemption from the ordinary burdens of taxation.  While the state could not interfere by any specific statute to prevent a corporation from placing its lines along these post-roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the state for the protection of its property and its rights is liable to be taxed upon its real or personal property as any other person would be.  It never could have been intended by the congress of the United States, in conferring upon a corporation of one state the authority to enter the territory of any other state and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the state into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support."  Citing *Telegraph Co. v. Texas,* 105 U. S. 460; *Railroad Co. v. Peniston,* 18 Wall. (U. S.) 5; *Thomson v. Pacific R. Co.,* 9 Wall. (U. S.) 579.  See also *Attorney General v. Western Union Telegraph Co.,* 141 U. S. 40, 11 Sup. Ct. Rep. 889.

The post roads act does not confer any rights of eminent

domain upon a telegraph company, but merely withdraws from state interference interstate commerce by telegraph. If the telegraph company does business in this state, it stands upon the same footing as all other corporations, except that it is protected from state interference in its business by the post roads act. *Western Union Telegraph Co. v. Pennsylvania R. Co.,* 195 U. S. 540, 25 Sup. Ct. Rep. 133.

These cases we think dispose of the contention that the right to do business over the post roads of the state of Nebraska is not taxable as property within the state The plaintiff contends, however, that, even if this be so, this intangible right cannot be taxed unless in connection with and as a part of the value of the tangible property with which it is associated, and upon the existence of which it depends. The scheme of taxation in Massachusetts, however, deducted from the proportion of the capital stock the value of property locally taxed, and thus reached the intangible property of the corporation. *Western Union Telegraph Co. v. Massachusetts, supra.*

The same contention, in substance, was made in the case of *Adams Express Co. v. Kentucky,* 166 U. S. 171, 17 Sup. Ct. Rep. 527. This case was brought in the circuit court of the United States for the district of Kentucky on behalf of the Adams Express Company to enjoin to the collection of certain taxes. A demurrer to the bill was sustained and the case appealed to the United States supreme court. The constitution of Kentucky provides that all property shall be taxed in proportion to its value; that the taxes shall be uniform, and shall be levied and collected by general laws; that corporate property shall pay the same rate of taxation paid by individual property, and allows the general assembly to provide for taxation based upon income, licenses or franchises. The statutes provided for a tax upon franchises, and for certain returns to be made by the officers of corporations with reference to the kind of business, the amount of capital stock, the number of shares, the amount of surplus, of undivided profits, of indebted-

ness, of gross earnings and other information considered to be of value in ascertaining the value of a franchise. Chief Justice Fuller writing the opinion said: "It is evident that the word 'franchise' was not employed in a technical sense, and that the legislative intention is plain that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies possessing no franchise, should be valued as an entirety, the value of the tangible property be deducted, and the value of the intangible property thus ascertained be taxed under these provisions; and as to railroad, telegraph, telephone, express, sleeping car, etc., companies, whose lines extend beyond the limits of the state, that their intangible property should be assessed on the basis of the mileage of their lines within and without the state. * * * The property, tangible and intangible, owned by corporations is subjected to like taxation, and so is the tangible and intangible property of individuals associated together in companies, and while the provisions of sections 4077 and 4078 do not apply to all individual taxpayers, yet reference to section 4020 and the schedule which must be returned by each taxpayer, as required by section 4058, demonstrates that individual taxpayers are also subjected to taxation on all their intangible property, whatever that may be, as well as on all their tangible property." See also *Henderson Bridge Co. v. Kentucky,* 166 U. S. 150, 17 Sup. Ct. Rep. 532.

The question of the taxation of intangible property as a distinct subject of taxation has been so clearly stated and discussed in an opinion on rehearing by Judge Brewer as to merit an extended quotation. He says: "The burden of the contention of the express companies is that they have within the limits of the state certain tangible property, such as horses, wagons, etc.; that that tangible property is their only property within the state; that it must be valued as other like property, and upon such valuation alone can taxes be assessed and levied against them. But this contention practically ignores the existence of in-

tangible property, or at least denies its liability for taxa-tion. In the complex civilization of today a large portion of the wealth of a community consists in intangible property, and there is nothing in the nature of things or in the limitations of the federal constitution which restrains a state from taxing at its real value such intangible property. * * * It matters not in what this intangible property consists—whether privileges, corporate franchises, contracts or obligations. It is enough that it is property which though intangible exists, which has value, produces income and passes current in the markets of the world. To ignore this intangible property, or to hold that it is not subject to taxation at its accepted value, is to eliminate from the reach of the taxing power a large portion of the wealth of the country. Now, whenever separate articles of tangible property are joined together, not simply by a unity of ownership, but in a unity of use, there is not infrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property. Upon what theory of substantial right can it be adjudged that the value of this intangible property must be excluded from the tax lists, and the only property placed thereon be the separate pieces of tangible property? * * * Now, it is a cardinal rule which should never be forgotten that whatever property is worth for the purposes of income and sale it is also worth for the purposes of taxation. * * * Suppose an express company is incorporated to transact business within the limits of a state, and does business only within such limits, and for the purpose of transacting that business purchases and holds a few thousands of dollars' worth of horses and wagons, and yet it so meets the wants of the people dwelling in that state, so uses the tangible property which it possesses, so transacts business therein that its stock becomes in the markets of the state of the actual cash value of hundreds of thousands of dollars. To the owners thereof, for the purposes of income and sale, the corporate property is worth hundreds of thousands of dollars. Does

substance of right require that it shall pay taxes only upon the thousands of dollars of tangible property which it possesses? Accumulated wealth will laugh at the crudity of taxing laws which reach only the one and ignore the other, while they who own tangible property, not organized into a single producing plant, will feel the injustice of a system which so misplaces the burden of taxation." *Adams Express Co. v. Ohio State Auditor,* 166 U. S. 185, 218, 17 Sup. Ct. Rep. 604. See also *Richmond & D. R. Co. v. Brogdan,* 74 N. Car. 707; *Richmond & D. R. Co. v. Commissioners,* 74 N. Car. 506; *State v Savage,* 65 Neb. 714.

Considering and construing together these sections of our statute, it seems clear that the object of the law is to reach the intangible value which may appertain to the use by individuals or corporations of the usual tangible agencies and instrumentalities employed in the telegraph, telephone and express business, and that the words "franchise value" as used in section 78, *supra,* are used in a broad sense and really mean the value of the intangible property. This may or may not include "corporate franchise," since it may be either an individual or a copartnership or a corporation which conducts the business and the "corporate franchise," if included, is only an incident and not the subject matter which it was intended to tax. This intangible property possesses value and is capable of valuation for the purposes of taxation. Its value is largely derived in the case of telegraph and telephone companies from the license or grant by the state to such companies to use the public highways, and in the case of express companies more indirectly by reason of the exercise of powers and privileges granted to and used by the railroad companies over whose lines the greater part of the business of express companies is carried on.

We conclude therefore as to this branch of the case that it is immaterial whether the franchise granted to the plaintiff by the state of New York is taxable in this state or not, since this franchise is not the subject of the tax imposed by said section 78.

Taxation of franchises in this state, however, must be "by valuation" and "in proportion to value." Section 1, article IX of the constitution of Nebraska, is as follows:

"The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises the value to be ascertained in such manner as the legislature shall direct, and it shall have power to tax peddlers, auctioneers, brokers, hawkers, commission merchants, showmen, jugglers, inn-keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, venders of patents, in such manner as it shall direct by general law, uniform as to the class upon which it operates."

This section is a substantial copy of section 1, article IX of the constitution of Illinois of 1870, except that a very material and vital change is made with reference to the taxation of franchises. In the Illinois constitution, the second provision of this section classifies persons using and exercising "franchises and privileges" with "peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, * * * insurance, telegraph and express interests or business," and they are taxable "in such manner as it (the legislature) shall from time to time direct by general law, uniform as to the class upon which it operates." In Illinois, therefore, the constitutional command that franchises shall be taxed by valuation does not exist. An examination of the constitutions of most of the states shows that, in the great majority of instances, no such limitation is found upon the power to tax franchises as is found in the constitution of this state. The different methods of subjecting franchises to taxation in other states are almost as numerous as the states. For instance, franchises have been taxed by the number of tons of coal mined, by the amount of capital stock employed within a state, by the net earnings of a corporation, by the average amount of deposits in banks, by the dividends paid, and

by the gross receipts of railway and other corporations. None of these methods of taxation however are based upon the value of the franchise, and the taxes are assessed without regard to any valuation. *Society v. Coite,* 6 Wall. (U. S.) 594; *Home Ins. Co. v. New York,* 134 U. S. 594, 10 Sup. Ct. Rep. 593; *Provident Institution v. Massachusetts,* 6 Wall. (U. S.) 611.

Since in this state franchises must be treated for the purpose of taxation the same as all other property, the question arises, can the legislature itself assess their value without the intervention of any other officer? In *Aachen & Munich Fire Ins. Co. v. City of Omaha,* 72 Neb. 518, we held that the power of the legislature over taxation was unlimited, except where the constitution has imposed restraints or limitations thereupon. There is no limitation in the constitution in regard to the method or manner in which values may be ascertained by the legislature. But if the legislature assumes the burden or duty of fixing a rule or method of ascertaining the value of property or franchises, it is strictly governed by the constitutional provisions that the assessment shall be by valuation and in proportion to value. An arbitrary, capricious and unjust rule for assessment by value made in disregard of the plain provisions of the constitution, whether by the assessor or the legislature, cannot be upheld. If the rule or manner prescribed by the legislature is reasonably fair and just in its operation, and is measurably proper and fairly well adapted to the attainment of the end required, it will not be interfered with, since exactness is well nigh unattainable in such matters, but if it is a rule or criterion by which an arbitrary standard is established which has no relation to the object sought to be attained, to wit, the ascertainment of value, it cannot be upheld as a proper exercise of legislative direction of the taxing power. As was said by Judge SEDGWICK in *State v. Karr,* 64 Neb. 514:

"The legislature may direct the manner of ascertaining the value of property and franchises; but it cannot pre-

scribe rules that prevent the assessment of the property and franchises of corporations on an equality with property in general in proportion to value."

There is nothing in the constitution which prevents different classes of property from being listed and valued for taxation by different modes and agencies. The property which is the subject of taxation is so various and different in its characteristics and conditions that a fixed and unvarying rule for ascertaining its value would be ineffective, and might easily produce a more unjust valuation than different methods and agencies created expressly for the purpose of adaptation to the different classes of property sought to be valued. The legislature is left with unlimited discretion as to the manner and method of ascertaining the value of property for taxation, that is, the instruments and agencies which it may use such as the requirement of schedules, returns, lists and so forth, and the creation of assessors, assessing boards, boards of equalization, boards of review and like bodies. All these matters are committed to the legislative discretion, but in all its acts and through all its proceedings in this behalf, the end in view must be to ascertain as nearly as may be the true value of property, so that each person or corporation may pay a tax in proportion to value.

It is said in *State v. Savage,* 65 Neb. 714: "The subject relating to the rule of uniformity has heretofore received consideration by this court in the case of *State v. Osborn,* 60 Neb. 415. It is there held that the valuation of property for taxation must be uniform. Say the court in the opinion, at page 419: 'There is another cardinal rule of taxation, and that is that "every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises." Constitution, art. IX, sec. 1. And this rule of uniformity applies not only to the rate of taxation, but as well to the valuation of property for the purposes of raising revenue. *High School District No. 137 v. Lancaster County,* 60 Neb. 147. The constitution forbids any discrimination whatever among taxpay-

ers. *State v. Graham,* 17 Neb. 43; *State v. Poynter,* 59 Neb. 417.' "

Are the gross receipts of a telegraph, telephone or express company a reasonable measure of the value of the franchise of such corporation? It is difficult to see that there is any necessary connection between the amount of money taken in by such a company and the value of the right to carry on its business. The value of a business depends in great measure upon the matter of profit or loss. If the business is conducted at a large profit, its value is enhanced. If at actual cost or at a loss, it is practically of no value. In the case of telegraph, telephone and express companies, the profits of the business, and consequently the value of a franchise, depend very largely upon the rates which they are authorized to charge for the service performed. It is a well known fact that in some instances the franchises conferred upon such corporations limit the rates which may be charged, while in others no such restriction is placed upon them, and the value of the business may often depend upon the nature and extent of such regulations. The costs and expenses of carrying on the business may be enhanced by the nature of the locality in which it is conducted, or by other conditions arising by reason of the circumstances surrounding each company so engaged. To say that the value of a business which yields large profits, and that of one from which no profits result, and in which the stockholders are called upon for assessments, is the same, is absurd and contrary to common sense. The gross receipts in the case of a company doing business at a loss may well be as great or greater than that of one which pays substantial profits, and the tax assessed under the rule of the statute would be as high in one case as in the other. Can this be said to be a tax in proportion to value, or is it not rather the application of an arbitrary standard not justified by the existence of any general relation between gross receipts and actual value?

In *Minces v. Schoenig,* 72 Minn. 528, 75 N. W. 711, the facts were that an ordinance of the city of Winona pro-

vided for licensing the conductors of "gift, fire and bank-rupt sales," and for taxing them two per cent. of the amount of the gross receipts of their sales. The two per cent. tax was complained of. The court say:

"The ordinance contains two sets of provisions—one relating to licensing the conductors of gift, fire, and bank-rupt sales, and the other providing for payment by them of a tax of two per cent. of the amount of the gross receipts of their sales. This mode of taxation is so palpably in violation of section 1 of article IX of the constitution, which requires that 'all property on which taxes are to be levied shall have a cash valuation,' that it cannot stand for a moment. The legislature itself has no power to adopt any such system of taxation, or to grant authority to a municipality to do so. But the provisions relating to licensing are severable from and independent of those relating to taxation, so that the invalidity of the latter does not render the former invalid."

"It is not competent for the legislature to declare that any species of property is of a particular value, because of its income, or to declare that the income alone shall be considered in determining its value." *Board of Assessment v. Alabama Central R. Co.,* 59 Ala. 551.

In *Crescent City R. Co. v. City of New Orleans,* 44 La. Ann. 1057, it was held that the earning capacity of a street railway company is the true basis of assessment, but the facts were that the board of assessors capitalized the property on the basis of the dividend paid at six per cent., then deducted the value of the tangible property and returned the difference as the value of the franchise. A very different rule from that fixed in this state and one which bore a clear relation to the actual value. So, also, it was held in *St. Charles Street R. Co. v. Board of Assessors,* 51 La. Ann. 459. See, also, *Inhabitants of Cheshire v. County Commissioners,* 118 Mass. 386; *City of Brookfield v. Tooey,* 141 Mo. 619; *Livingston v. City of Paducah,* 80 Ky. 656; *State v. Lakeside Land Co.,* 71 Minn. 283, 73 N. W. 970; *Doster v. Sterling,* 33 Kan. 381, 6 Pac. 556; *State v. Jones,* 51 Ohio St. 492.

Under our former constitution, where no restriction is imposed such as in section 1, article IX of the present one, this tax would be valid. A land road tax of $4 a quarter section was imposed on all lands in the state, under that constitution, and held valid (*Burlington & M. R. R. Co. v. York County*, 7 Neb. 487), but was repealed by the adoption of the present constitution. *McCann v. Merriam*, 11 Neb. 241.

We are of the opinion that the amount of gross receipts taken in by express, telephone and telegraph companies during the year prior to the time of assessment, taken alone, is not a reasonable and just method of ascertaining the value of the franchise possessed by such corporations; that it fixes an arbitrary rule, not founded upon justice nor upon any definite relation between receipts and value, and is in violation of the rule laid down by the first subdivision of section 1, article IX of the constitution.

The amount of gross receipts is beyond question one of the items which enters into the value of a business. It is entirely proper to consider the same in estimating value, and in fact it would be difficult to attain to a proper judgment of actual value without a knowledge of what such receipts might be. But there are other facts which are equally necessary to know in order to form any just or fair conception of the value of the privileges and rights exercised by such corporations, and none of these are allowed to be considered by the statute. So far as section 78 seeks arbitrarily to fix the value of a franchise at the sum of the gross receipts of such corporation for the previous year, it contravenes the constitutional limitation of taxation by valuation, and is void.

In order that there may be no misapprehension in regard to the point decided in this case, we deem it advisable to say that, while the legislature may not arbitrarily set up an unvarying rule or standard by which to determine the value of a franchise we have already upheld a tax upon gross receipts imposed under the new revenue law. A tax levied upon the gross receipts of insurance companies dur-

38

ing the year preceding April 1 of the year in which the tax is assessed may properly be levied and assessed in this state under the provisions of the second subdivision of section 1, article IX of the constitution. *Aachen & Munich Fire Ins. Co. v. City of Omaha,* 72 Neb. 518. And so likewise with express, telegraph and telephone interests or business, there is no restriction upon the power of taxation of such interests or business, except that it must be by general law, uniform as to the class. The tax which may be levied under this provision is a business tax and is not required to be levied by valuation, and if the power is desired to be exercised by municipalities, it must be done under their own local ordinances and not by general law. *Aachen & Munich Fire Ins. Co. v. City of Omaha, supra.* Unless intangible property is reached by the exercise of the legislative power to tax granted under the second subdivision of section 1, a large amount of value subject to taxation within this state will fail to bear its just share of the public burden. While perhaps some method may be found by which the value of these intangible rights or franchises may be equitably valued for taxation, still it is within the power of the legislature to reach such property for taxation by a more direct manner and without requiring any valuation. There is nothing to prevent provisions of law similar to those affecting insurance companies from being applied to companies engaged in the express, telegraph or telephone business, so far as levying a tax upon their business as measured by the gross receipts is concerned. The only fault to be found with the sections applying to these occupations as they now stand is that the legislature said too much when it provided that the franchises should be valued, and the gross receipts taken as the measure of the value. The gross receipts may be taken as a proper measure of the amount of business tax to be levied upon such business, but may not be arbitrarily taken as a measure of the value of the franchise.

Under the view taken of the second contention of the plaintiff, it is unnecessary to consider whether the exac-

tion of such tax is the taking of the plaintiff's property without due process of law.

We recommend that the judgment of the district court be reversed and the cause remanded, with directions to grant the relief prayed in plaintiff's petition.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with directions to grant the relief prayed in plaintiff's petition.

JUDGMENT ACCORDINGLY.