## WESTERN UNION TELEGRAPH CO. v. WEAVER et al.
### No. 301.

District Court, D. Nebraska, Lincoln Division.
Nov. 18, 1932.

Francis A. Brogan, Alfred G. Ellick, and Dana B. Van Dusen, all of Omaha, Neb., for complainant.

C. A. Sorensen, Atty. Gen., and L. R. Newkirk and Hugh LaMaster, Asst. Attys. Gen., for defendants.

Before GARDNER, Circuit Judge, and MUNGER and WOODROUGH, District Judges.

GARDNER, Circuit Judge.

This is a suit in equity, brought by the plaintiff against the defendants, as members of the state board of equalization and assessment and the state tax commissioner of the state of Nebraska, to enjoin defendants from certifying to the county assessors of eighty-four counties of that state a "franchise value" of $245,000, assessed by the state board of equalization and assessment against plaintiff, pursuant to the provisions of sections 77-801 and 77-802, Compiled Statutes of 1929. The matter is before us on motion for a temporary injunction.

Plaintiff is a corporation, organized un-

der the laws of the state of New York, and owns and operates a telegraph system and business throughout the United States and foreign countries for the purpose of transmitting messages by telegraph, and as a part of this system and business it owns and operates telegraph lines and does a telegraph business in the state of Nebraska. On June 8, 1867, it filed with the Postmaster General of the United States its written acceptance of the Act of Congress of July 24, 1866 (14 Stat. 221, 222, R. S. §§ 5263-5268, U. S. C., Title 47, §§ 1-6 [47 USCA §§ 1-6]). In the year 1929, plaintiff's real and personal property throughout eighty-four counties of Nebraska was assessed in the aggregate sum of $1,261,978, upon which it paid state, county, school, city, and village taxes amounting to $26,735.25. In the same year its intangible property, consisting of money, bank deposits, book accounts, open accounts, judgment, choses in action, and contracts for sale and labor, was assessed at $179,282, upon which it paid a tax of $954.33. Plaintiff also paid an occupation tax, pursuant to the provisions of sections 24-1701 to 24-1706, inclusive, Compiled Statutes of Nebraska 1929, in the sum of $950; and for the same year it also paid occupation taxes to ninety-five cities and villages in Nebraska in the aggregate sum of $3,227.51.

Sections 77-801 and 77-802 of the Compiled Statutes of Nebraska of 1929 provide as follows:

"77-801. Each and every person, association, co-partnership, joint stock company or corporation, organized under the laws of this state or any other state or government engaged in street railways, waterworks, electric lights, gas works, natural gas, mining, express, telegraph, telephone business in the State of Nebraska, and all other like companies and like associations, or owning or operating a pipe line in the State of Nebraska, whether such line is used for the transmission of oil, heat, steam or any substance to be used for lighting, heating, power or other purpose, or for the transmission of articles by pneumatic or other power, shall, in addition to listing the tangible property owned in each governmental subdivision by such person, association, co-partnership, joint stock company or corporation, and being taxed thereon in like manner as other tangible property is taxed in the governmental subdivision, shall furnish to the local assessor and to the tax commissioner a sworn statement of the amount of the capital stock, setting forth particularly:

"First. The name and location of the company;

"Second. The amount of capital stock authorized, and the number of shares into which capital stock is divided;

"Third. The amount of capital stock paid up;

"Fourth. The market value, or if of no market value, then the actual value of the shares of stock;

"Fifth. The true value of its franchise, if any, granted under and by virtue of any law of this state or ordinance of any city or village;

"Sixth. The length of time such franchise was granted; together with the date of same;

"Seventh. The total amount of indebtedness, except the indebtedness for current expenses, excluding from expenses the amount paid for the purchase or improvement of property;

"Eighth. The amount of capital on which a dividend was declared during the last preceding year;

"Ninth. The date of each dividend declared during said year, ending with the last day of the last preceding December;

"Tenth. The rate per cent of each dividend declared;

"Eleventh. The total amount of each dividend declared during the year ending with the last day of the last preceding December;

"Twelfth. Gross earnings during said year;

"Thirteenth. Net earnings during such year;

"Fourteenth. Amount of surplus;

"Fifteenth. Amount of profit added to sinking fund during said year;

"Sixteenth. Maximum price at which shares of stock sold during said year;

"Seventeenth. Minimum price at which shares of stock sold during said year;

"Eighteenth. Average price at which shares of stock sold during said year.

"77-802. The sworn statement, as set forth in section 1 of this article (77-801), together with any other information available, shall be used by the state board of equalization in determining the franchise value of such companies for each of the local assessing districts. The tax commissioner shall certify to the county assessors the value so determined and the same shall be listed and assessed on the same basis as tangible property in each governmental subdivision."

In 1929, plaintiff, pursuant to the requirements of the Nebraska statutes, furnished to the state tax commissioner a sworn statement, touching the value of its franchise as follows: "This company has no franchise of any kind, from the State of Nebraska or any of its municipalities. Telegraph lines in Nebraska were constructed, and are now maintained and operated under Act of Congress approved July 24, 1866, being 'An Act to aid in construction of telegraph lines, etc.'"

Plaintiff alleges that its business and property within the state of Nebraska has been maintained and operated under and by virtue of the Act of July 24, 1866 (U. S. C., Title 47, §§ 1-6 [47 USCA §§ 1-6]), and that it has never owned, acquired, nor exercised any franchise or charter derived from the state of Nebraska, or from any county, municipality, or governmental subdivision thereof.

Defendants in their answer allege that plaintiff holds franchises from the state of Nebraska and from many of its municipalities and governmental subdivisions, said franchise from the state being granted by chapter 87 of the Laws of 1887, Compiled Statutes 1929, § 86-301. This Nebraska statute purports to grant to telegraph and telephone companies incorporated or doing business in the state, a right of way along the public roads of the state for the erection of poles and wires. It is also alleged that franchises had been granted to the plaintiff without charge by many cities and villages, granting it the use of the streets; that the franchise value includes, not only these franchises, but also intangible values accruing to plaintiff's tangible property in the state as a going concern and as a part of its general telegraph system throughout the United States, which intangible values have a situs in the state of Nebraska. The answer further alleges that defendants "deny that the plaintiff's tangible property was assessed in any county as part of the general telegraph system of plaintiff but allege that the assessments in the several counties related only to tangible property therein, separate and distinct from its value as part of a general system."

It is also alleged in the answer that defendants "deny that in assessing plaintiff's said franchise value, the defendants assessed such value upon the basis of the physical and other property enumerated in paragraphs seven and eight of the petition but allege that the assessment was based solely upon the franchise value and the intangible value appertaining to and inhering in the plaintiff's physical property in this State as a going concern and as an integral part of the entire telegraph system of the plaintiff."

When the challenged assessment was made plaintiff owned, maintained, and operated 3,750.23 miles of pole lines throughout eighty-four counties of the state in which it operated its business, of which 3,747.64 miles were located and maintained along railroad rights of way, and 2.59 miles were located and maintained over and along streets and highways of cities, towns, and villages. It also maintained and operated 35.264 miles of conduits, of which 18.123 miles were along railroad rights of way, and 17.141 miles were along streets and highways of towns and villages.

It is the contention of plaintiff (1) that sections 77-801 to 77-803 of the Compiled Statutes of Nebraska of 1929 authorize the state board of equalization and assessment to assess only special franchises granted to those engaged in a public utility or public service business, and not franchises "to be" or "to do," or "the intangible value appertaining to and inhering in plaintiff's physical property in the state as a going concern and as part of plaintiff's general telegraph system throughout the United States and foreign countries"; (2) that plaintiff exercises no special franchise granted by the state of Nebraska because it does not occupy public roads for the erection of its poles and wires, and, if it did occupy such public roads, the grant in the cited Nebraska statutes added nothing to its rights already possessed under the Federal Post Roads Act (19 Stat. 319), and, hence, such grant was of no value; (3) that it neither exercised nor enjoyed any special franchise granted by the municipalities in Nebraska because the ordinances of such municipalities alleging to grant franchises were not in fact grants of franchises, but were purely regulatory, but that, even interpreted as grants of franchise permitting plaintiff to occupy the streets of the municipalities, they added nothing to the rights which it already possessed under the Federal Post Roads Act, and, hence, were of no value; (4) that defendants, having admitted that the challenged assessment includes a valuation of alleged municipal franchises, such value may not be allocated to all of the eighty-four counties and numerous municipalities of the state where plaintiff does business, but may only be certified for levy purposes to its own representative municipality because that is its sole situs for taxation purposes; and no attempt has been made in the "franchise tax law," or any other provision of the laws of

the state, to change or disturb such situs; and (5) that the only special franchise exercised or enjoyed by the plaintiff in the state of Nebraska was such right, power, privilege, permission, or franchise as was granted it by the federal government, which is not taxable by the state or any of its subdivisions.

■ The primary franchise of a corporation, often referred to as the "to be" franchise, is that granted by the state under whose laws the corporation is organized. It is described in Home Insurance Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 595, 33 L. Ed. 1025, as "the right or privilege given by the state to two or more persons of being a corporation, that is, of doing business in a corporate capacity, and not the privilege or franchise which, when incorporated, the company may exercise."

Such a franchise could, confessedly, only be taxed by the state of New York, under whose laws the plaintiff was incorporated. Louisville & Jeffersonville Ferry Co. v. Kentucky, 188 U. S. 385, 23 S. Ct. 463, 47 L. Ed. 513; London & San Francisco Bank v. Block (C. C.) 117 F. 900. The correctness of plaintiff's position in this contention is sustained also by the Supreme Court of Nebraska in Northern Nebraska Power Co. v. Holt County, 120 Neb. 724, 235 N. W. 92, and Western Union Telegraph Co. v. City of Omaha, 73 Neb. 527, 103 N. W. 84. It seems clear that plaintiff's franchise "to be" was not taxable in Nebraska.

■ In various forms plaintiff contends that it has a federal franchise, granted it by the act of Congress approved July 24, 1866, to operate upon the post routes or roads of Nebraska, including city streets, state highways, and railroad rights of way, all of which are made post roads by the federal act, and that this federal franchise cannot be taxed by the state authorities. This contention of the plaintiff must also be sustained. California v. Central Pacific R. Co., 127 U. S. 1, 8 S. Ct. 1073, 32 L. Ed. 150; Central Pacific R. Co. v. California, 162 U. S. 91, 16 S. Ct. 766, 40 L. Ed. 903; Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 16 S. Ct. 1054, 41 L. Ed. 49; Williams v. Talladega, 226 U. S. 404, 33 S. Ct. 116, 57 L. Ed. 275; City and County of San Francisco v. Western Union Telegraph Co., 96 Cal. 140, 31 P. 10, 17 L. R. A. 301; Western Union Telegraph Co. v. Los Angeles County, 160 Cal. 124, 116 P. 564; Western Union Telegraph Co. v. City of Visalia, 149 Cal. 744, 87 P. 1023; Western Union Telegraph Co. v. Lakin, 53 Wash. 326, 101 P. 1094, 17 Ann. Cas. 718.

It appears that substantially all of plaintiff's telegraph lines are upon the rights of way of railway companies, and that a comparatively insignificant mileage of lines or conduits is maintained in cities and villages. It is therefore contended by plaintiff that none of these lines are operated under a permission or franchise from the state, nor under a permission or franchise from the cities or villages, but are maintained and operated solely under authority of federal legislation, subject only to regulatory ordinances in each of the cities, towns, and villages, prescribing the height, size, and location of poles, and the elevation of aerial lines, and the placing of equipment under ground. It appears that most of these municipalities have required plaintiff to allow the respective cities to use its poles for the purpose of attaching thereto their fire alarm boxes and fire alarm and police wires, and in addition some of the cities impose a charge of $1 for each telegraph pole erected in the streets and alleys of such cities.

Plaintiff asserts that sections 77-801 to 77-803 of the Compiled Statutes of Nebraska of 1929 authorize an assessment only of special franchises, such as a right to occupy the highways, and not the franchise either "to be" or "to do"; that is, to exercise the functions for which the plaintiff was incorporated, and for that reason do not authorize a taxation of "the intangible value appertaining to and inhering in plaintiff's physical property in this state as a going concern, and as a part of plaintiff's general telegraph system throughout the United States and foreign countries."

Succinctly stated, these contentions amount to the assertion that plaintiff enjoys no franchise in Nebraska, other than its federal franchise, which Nebraska cannot tax, and that the Nebraska taxing statutes here under consideration are framed to reach such grants from the sovereignty in Nebraska as may be classed as "special franchises," but do not attempt to tax the value of plaintiff's property in Nebraska as part of a general telegraph system extending throughout the United States and foreign countries, and that the only use of public highways or streets that plaintiff makes in Nebraska is a use under and by virtue of regulatory ordinances which do not amount to franchises. In the final analysis, this may be said to be the battle field for the contentions of the parties to this suit.

■ Viewing the statutes as a whole, they seem to exclude the thought that special grants from a sovereign power were meant to be taxed, but were to be considered by the tax-

ing body as an element in arriving at the value of the system of the plaintiff as an entirety in the state of Nebraska, and as a component part of a vast and extensive system extending throughout the United States and foreign countries. The question is: What was the value of plaintiff's property in Nebraska—not a scrap value, nor the value of a segregated portion, independent of the entire property —but what was the value of that part of plaintiff's entire system, considered as a going concern which is located in Nebraska? This includes intangible values. Whether that be technically properly termed as "franchise values" is not very material. A franchise "to be" or "to do" is a right or privilege granted by the sovereignty to persons or corporations, to do some act or acts which they could not perform without this grant from the sovereign power. McPhee & McGinnity Co. v. Union Pacific R. Co. (C. C. A. 8) 158 F. 5. If there is no special grant from the government, there is, in the sense above noted, no franchise; but as said by the Supreme Court in Educational Films Corp. v. Ward, 282 U. S. 379, 51 S. Ct. 170, 171, 75 L. Ed. 400: "The nature of a tax must be determined by its operation rather than by particular descriptive language which may have been applied to it."

■ This would seem particularly true of a tax on that elusive class or quality of property variously and often loosely described as a franchise. In a taxing statute it is not essential to hold to a hard and fast definition of the term. Louisville & N. R. Co. v. Commonwealth, 181 Ky. 193, 204 S. W. 94. It may appear from a consideration of the statute that the intent of the legislation was to reach and tax what is frequently referred to as the "corporate excess." This involves assessing the property of a great business system, not only as so much property segregated from and without any relation to the whole system, but to value the property in the state as a part of one entire and continuous system, and to give it such added value as it may have because of its being a part of that system. Southern R. Co. v. Com. of Kentucky, 274 U. S. 76, 47 S. Ct. 542, 71 L. Ed. 934; Western Cartridge Co. v. Emmerson, 281 U. S. 511, 50 S. Ct. 383, 74 L. Ed. 1004; Educational Films Corp. v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400; Maine v. Grand Trunk R. Co., 142 U. S. 217, 12 S. Ct. 121, 35 L. Ed. 994; Kansas City, Ft. S. & M. R. Co. v. Botkin, 240 U. S. 227, 36 S. Ct. 261, 60 L. Ed. 617; Cream of Wheat Co. v. Grand Forks County, 253 U. S. 325, 40 S. Ct. 558, 64 L. Ed. 931; Western Union Telegraph Co. v. Missouri, 190 U. S. 412, 23 S. Ct. 730, 732, 47 L. Ed. 1116; Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 15 S. Ct. 360, 39 L. Ed. 311; Western Union Telegraph Co. v. Norman (C. C.) 77 F. 13, 23; Western Union Telegraph Co. v. Massachusetts, 125 U. S. 530, 8 S. Ct. 961, 965, 31 L. Ed. 790; Adams Express Co. v. Kentucky, 166 U. S. 171, 17 S. Ct. 527, 530, 41 L. Ed. 960; Massachusetts v. Western Union Telegraph Co., 141 U. S. 40, 11 S. Ct. 889, 35 L. Ed. 628; Western Union Telegraph Co. v. City of Omaha, 73 Neb. 527, 103 N. W. 84, 85; Gamble-Robinson Fruit Co. v. Thoresen, 53 N. D. 28, 204 N. W. 861, 865, 42 A. L. R. 1039.

In Western Union Telegraph Co. v. Missouri, supra, it appeared that the taxing authorities of the state of Missouri valued the poles, the wires, and the instruments of the telegraph company, and then valued "all other property" at $856,400.56; and it was the contention of the telegraph company that the "all other property" so assessed necessarily included the federal franchise, and, hence, the tax was void. In the course of the opinion in that case, the court quoted with approval from the opinion of the Supreme Court of Missouri, 165 Mo. 502, 65 S. W. 775, as follows: " 'So, that, when, in determining the value of the property of the defendant in this state, the board of equalization took into consideration "the cost of construction and equipment of said Western Union Telegraph Company, and the location thereof, and its traffic and business, and the par value of its stock and bonds, and the gross receipts and net earnings and franchises owned by said company, and the value thereof," it did not and could not have included therein any franchise derived by the defendant from the government of the United States, because that government had conferred no such franchise; nor was such a valuation placed upon "all other property," a tax upon the franchise of the defendant company. The franchise derived by the defendant from the state of New York was considered by the board in determining the value of the property of the defendant located in this state. That is, that property was valued, not as so many poles, so much wire, so many instruments, or so much "other property," in the abstract, but was valued in the concrete, in the relation that such property in the abstract bore to other property in the abstract, which being brought into relation towards each other—into a system, located partly in this state and partly in other states—gave each part a concrete value, which was much greater than its abstract

value. The right to exist—the franchise—of the defendant was property, and was subject to taxation, either directly, in the proportion that the portion of the franchise exercised in this state bore to the proportion of the franchise exercised in all other states, or indirectly, as was done in Massachusetts and was done here, by being impressed upon the tangible property owned by it, thereby increasing its value, and by considering the franchise and its tangible property as a system, and then assessing the part of the property forming a part of the system and located in Missouri as of its proportionate value of the whole property constituting the system.'"

Reviewing many of the decisions, the court in its opinion concluded as follows: "These cases establish that, in estimating the value of the property of a telegraph company situate within a state, it may be regarded, not abstractly or strictly locally, but as a part of a system operated in other states, and that the state was not precluded from taxing the property because the state had not created the company or conferred franchise upon it, or because it derived rights or privileges under the act of July, 1866, or was engaged in interstate commerce."

In Western Union Telegraph Co. v. Massachusetts, supra, it was contended, as in this case, that most of the company's lines were over post roads. The tax under consideration involved an apportionment made by the treasurer of the state of the taxable value of the shares of the corporation, the treasurer giving to the shares of stock taxed in Massachusetts a value bearing the same proportion to the entire capital stock of the corporation that the miles of line of the company in Massachusetts bore to its entire mileage in the United States. In sustaining the tax, the court said: "The tax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the state of Massachusetts, and the proportion of the length of its lines in that state to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by section 5263 of the Revised Statutes [47 USCA § 1], or by the commerce clause of the constitution."

In Adams Express Co. v. Kentucky, supra, the Kentucky statute required the furnishing of information similar to the infor-

mation required to be furnished by the Nebraska statutes here under consideration. The court held that the word "franchise" was not employed in its technical sense, and in disposing of that contention said: " * * * It is evident that the word 'franchise' was not employed in a technical sense, and that the legislative intention is plain that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies possessing no franchise, should be valued as an entirety, the value of the tangible property be deducted, and the value of the intangible property thus ascertained be taxed under these provisions; and as to railroad, telegraph, telephone, express, sleeping car, etc., companies, whose lines extend beyond the limits of the state, that their intangible property should be assessed on the basis of the mileage of their lines within and without the state."

The principle of these decisions is well expressed by District Judge Barr in Western Union Telegraph Co. v. Norman, supra, in which a statute of Kentucky was under consideration. The statute purported on its face to tax franchises. Holding that the court was not restricted to the technical meaning of the word "franchise," Judge Barr said: "Notwithstanding the use of the words 'franchise' and 'corporate franchise' in the several sections of this statute, we are of the opinion that the property to be taxed under its provisions as intangible property is not confined to franchises or corporate franchises, but it is intended to include all intangible property, by the mode indicated, whether or not such property be legally 'franchises' or 'corporate franchises.' It is not a tax upon an occupation or franchise granted by other states or by the United States, but a tax upon the property owned and enjoyed by these several associations, companies, and corporations, which is claimed to be within the taxing power of the state."

In Gamble-Robinson Fruit Co. v. Thoresen, supra, the Supreme Court of North Dakota said: "There may be a tax upon the corporate franchise rated according to the corporate excess, or there may be a tax upon the property of the corporation (principally intangible) which is measured by the same standard."

It seems clear from the authorities that the name which may be given to a tax is not controlling; but the question in every case is what is the inherent nature of the tax. An examination of the statutes here involved, under which the defendants seek to justify their

action, convinces that the intention is to tax the value of the property used in the state as a component part of a larger whole, and thereby reach that intangible value which is not otherwise taxed in the state of Nebraska, but which the authorities recognize as a legitimate subject of local taxation. The Supreme Court of Nebraska has in effect so said in Western Union Telegraph Company v. City of Omaha, supra. It is there said: "While the Legislature has termed this intangible property 'a franchise,' the concept, the idea, might as well have been expressed by some other name. It is this intangible right which possesses value, which is intended to be reached and valued for taxation by these provisions, independent of the tangible property which is otherwise assessed. It is, no doubt, true that, if the word 'franchise' were used in the more restricted sense, it would not embrace these privileges and rights; but, as has often been said, the word 'franchise' is sometimes used as a generic term, which may include not only the right granted by the crown in England, or by the state in this country, to be a corporation, but the right to exercise certain rights or privileges of a public nature, which properly and in the first instance belonged to the royal prerogative. There is a clear distinction between 'corporate franchise' and franchises or privileges which a corporation or individual may exercise, and it is the latter which are made the subject of taxation by these provisions."

Further the court said: "Considering and construing together these sections of our statute, it seems clear that the object of the law is to reach the intangible value which may appertain to the use by individuals or corporations of the usual tangible agencies and instrumentalities employed in the telegraph, telephone, and express business, and that the words 'franchise value,' as used in section 78, are used in a broad sense, and really mean the value of the intangible property. This may or may not include 'corporate franchise,' since it may be either an individual or a co-partnership or a corporation which conducts the business, and the 'corporate franchise,' if included, is only an incident, and not the subject-matter which it was intended to tax."

■ The fact that plaintiff may rightfully exercise rights or privileges in the nature of franchise granted by the federal government, and may be engaged in interstate commerce, does not prevent the state from taxing its property located within the boundaries of the state. It must be presumed that the taxing authorities did not assess the federal franchise granted plaintiff by act of Congress, nor the franchise "to be," granted plaintiff by the state of New York, both of these being immune from taxation, but that they taxed the property of plaintiff which was not so immune. Central Pacific R. Co. v. California, 169 U. S. 91, 16 S. Ct. 766, 40 L. Ed. 903; People v. State Board of Tax Commissioners, 224 N. Y. 167, 120 N. E. 192.

■ There is a suggestion that the tax under consideration is void under the Constitution of Nebraska, but the point is not pressed in argument, and, certainly, in the absence of argument, the statute should not be held to violate the State Constitution, unless it is clearly violative of the Constitution. The question will, therefore, be given no further consideration.

■ It is also urged by the plaintiff that in the cases in which a tax similar to the one here involved was upheld the statute directed the taxing officials as to the method of assessment and taxation, while the Nebraska statutes failed to prescribe such method. But, considered in connection with other Nebraska statutes relative to the taxation of property of similar corporations, these statutes seem to furnish a sufficiently definite guide to enable the taxing officers to discharge the duties imposed upon them thereby. It is no objection to a statute that it leave to the taxing officials the adoption of a method. In Western Union Telegraph Co. v. Missouri, supra, the court said: "* * * It would seem incontestable that the state could either prescribe the method or confer upon its taxing officers the power to adopt a suitable one."

■ The objection that the statute provides for the assessment of the tax as a whole, but fails to provide for a distribution and allocation to the eighty-four different counties, is not available to the plaintiff. If its property is regularly and fairly taxed, it is no concern of it that, in the distribution among the various counties of the state, there may result inequality.

In a second cause of action plaintiff seeks an injunction to prevent there being certified to some eighty-four counties in Nebraska an increase in the assessed valuation of the tangible property of plaintiff to the amount of 30 per cent. of the value of such property. This increase was made by the state board of equalization and assessment on August 2, 1929. We are not called upon to consider the regularity or validity of this additional assessment, because the defendants in their answer to this cause of action confess that this increase was without authority.

It follows that, as to the first cause of action, the preliminary injunction prayed for should be denied. As to the second cause of action, it appears from the allegations of the defendants' answer that they did not, at the time of the filing of their answer, and do not now, threaten to certify any of the increased valuation referred to in that cause of action. As no rights are further asserted under the second cause of action by the defendants, it would seem to be unnecessary to enjoin the officers from doing something which they of record disclaim any intention of doing. Doubtless the plaintiff was warranted in bringing suit on the second cause of action, and, hence, no costs should be awarded to either of the parties.